1   **LEWIS BRISBOIS BISGAARD & SMITH LLP**
    CARY L. WOOD, SB# 146598
2     E-Mail: Cary.Wood@lewisbrisbois.com
    ANKUR TARNEJA, SB# 262593
3     E-Mail: Ankur.Tarneja@lewisbrisbois.com
    633 West 5th Street, Suite 4000
4   Los Angeles, California 90071
    Telephone: 213.250.1800
5   Facsimile: 213.250.7900

6   Attorneys for Defendants LEON'S
    QUALITY ADJUSTERS, INC., and
7   TONY RODRIGUEZ

8              UNITED STATES DISTRICT COURT

9      EASTERN DISTRICT OF CALIFORNIA, BAKERSFIELD DIVISION

10

11  | JIMMIE R. BROOKS, | CASE NO. 1:15-CV-00965-JLT |

12  Plaintiff,                **DEFENDANTS LEON'S QUALITY ADJUSTERS, INC. AND TONY**
13  vs.                       **RODRIGUEZ'S NOTICE OF MOTION AND MOTION FOR**
14  LEON'S QUALITY ADJUSTERS,  **SUMMARY JUDGMENT, OR, ALTERNATIVELY, PARTIAL**
    INC., TONY RODRIGUEZ, and DOES  **SUMMARY JUDGMENT;**
15  1 through 10, inclusive,   **MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**
16  Defendant.                 **OF ANKUR TARNEJA WITH EXHIBITS A TO G;**
17                             **DECLARATION OF LEON SCROGGINS WITH EXHIBITS A**
18                             **TO C**

19
                            Judge:  Hon. Jennifer L. Thurston
20                          Date:   August 9, 2016
                            Time:   9:30 a.m.
21
                            Action filed:   June 25, 2015
22                          Trial:          December 13. 2016

23

24       TO PLAINTIFF AND TO HIS ATTORNEY OF RECORD:

25       PLEASE TAKE NOTICE that on August 9, 2016, at 9:30 a.m., Defendants

26  Leon's Quality Adjusters, Inc. and Tony Rodriguez (collectively "Defendants")

27  move, pursuant to Federal Rule of Civil Procedure 56, for an order granting

28  summary judgment, or, alternatively, partial summary judgment, in favor of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-6682-9614.1
                                    1
DEFENDANT LEON'S QUALITY ADJUSTERS RESPONSES TO PLAINTIFF'S DOCUMENT DEMAND (SET ONE)

1 Defendants and against Plaintiff Jimmie R. Brooks ("Plaintiff") on the following
2 grounds:

3     Issue No. 1: Defendants are not "debt collectors" for purposes of the Fair
4 Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and, as such,
5 they did not violate the FDCPA when they repossessed Plaintiff's truck. *Pflueger v.*
6 *Auto Fin. Group, Inc.*, 1999 U.S. Dist. LEXIS 16701, *12 (C.D. Cal. April 26,
7 1999) (*citing Jordan v. Kent Recovery Services, Inc.*, 731 F. Supp. 652 (D. Del.
8 1990)); *see also Clark v. Auto Recovery Bureau Conn., Inc.*, 889 F. Supp. 543 (D.
9 Conn. 1994); *Siebel v. Society Lease, Inc.*, 969 F. Supp. 713 (M.D. Fla. 1997).

10     Issue No. 2: Defendants had a "present right to possession" of the truck under
11 15 U.S.C. § 1692f(6), as California Commercial Code § 9609 allows a secured party
12 to take possession of a collateral after default without judicial process if it proceeds
13 without breach of the peace. *See* Cal. Comm. Code § 9609(b)(2).

14     Issue No. 3: Defendants did not "breach the peace" under California
15 Commercial Code § 9609(a) when they entered an unlocked and open parking lot to
16 repossess Plaintiff's truck, and where Plaintiff did not even observe the repossession
17 take place. *See Pflueger v. Auto Fin. Group, Inc.*, 1999 U.S. Dist. LEXIS 16701, *1
18 (C.D. Cal. April 26, 1999) (*citing Williams v. Ford Motor Co.*, 674 F.2d 717, 719-
19 20 (8th Cir.1982) (holding that breach of the peace involving repossession
20 companies usually occurs when an incident tends to provoke violence); *see also*
21 California Business & Professions Code § 7507.12(a) (repossession is complete
22 once collateral is connected to the repossessor's truck).

23     Issue No. 4: Defendants did not violate the Rosenthal Fair Debt Collection
24 Practices Act, California Civil Code § 1788 *et seq.*, as they do not regularly (in fact,
25 never) engage in debt collection, but, rather, they engaged in the enforcement of
26 security interests, and they are not in the business of collecting debts. *See* Cal. Civil
27 Code § 1788.2(d).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1       Issue No. 5: Defendants did not convert the truck at issue because Plaintiff

2   defaulted on his payments and did not have a right to possession of the truck, and

3   Defendants did not use force or threats of force to secure possession of the truck.

4   *See Moore v. Regents of the Univ. of Cal.*, 51 Cal. 3d 120, 136 (1990); *see also*

5   *Hendersen v. Security Nat'l Bank*, 72 Cal. App. 3d 764, 770 (1977) (relying on

6   *Manhattan Credit Union Co. v. Brewer*, 232 Ark. 976, 978 (1961)).

7       Based on the foregoing, there are no triable issues of fact in this case.

8   Accordingly, the action against Defendants has no merit, and they are entitled to

9   summary judgment as a matter of law.

10      This Motion is based upon this notice, the attached Memorandum of Point

11  and Authorities, the Declarations of Ankur Tarneja and Leon Scroggins filed

12  concurrently herewith, the Separate Statement of Undisputed Facts filed

13  concurrently herewith, all exhibits, papers, pleadings, and documents filed herein,

14  and upon all further oral and documentary evidence as may be presented at the time

15  of the hearing on this Motion.

16

17  DATED: July 1, 2016           CARY L. WOOD

18                          ANKUR TARNEJA

                           LEWIS BRISBOIS BISGAARD & SMITH LLP

19

20

21

22

23  By: _____

24                 Ankur Tarneja

               Attorneys for Defendants LEON'S

25                 QUALITY ADJUSTERS, INC., and

               TONY RODRIGUEZ

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................1

II.  STATEMENT OF FACTS ................................................................2

    A.   Plaintiff Finances the Truck with Gateway and Defaults on His Loan. .....................................................................................2

    B.   Gateway Notifies Plaintiff that it will Repossess the Truck and hires Leon's. ..............................................................................3

    C.   Plaintiff Conceals the Location of the Truck. ..........................3

    D.   Bolthouse's Employee Parking Lot is Open 24/7. ...................3

    E.   Rodriguez Connects the Truck and Repossesses it without any issues.........................................................................................4

    F.   Plaintiff Learns that the Truck has been towed away, but he does not actually observe it happen. ..................................................6

    G.   Plaintiff Searches for the Truck, Calls 911, and He Still Does Not Think that the Truck Has Been Repossessed. ...................7

    H.   Plaintiff finds Rodriguez and the Truck. ..................................7

    I.   Rodriguez Allows Plaintiff to Remove his Personal Property from the Truck. ..........................................................................8

    J.   Rodriguez never used or threatened force against Plaintiff. ...8

    K.   Plaintiff has not produced any video surveillance of the Truck being connected and towed away. ............................................9

    L.   Despite Plaintiff's Claims That He Had No Idea that the Truck Would be Repossessed, Plaintiff Conceals the Location of it for Weeks. .......................................................................................9

III. SUMMARY JUDGMENT STANDARDS ..................................... 10

IV.  DEFENDANTS DID NOT VIOLATE THE FAIR DEBT COLLECTIONS PRACTICES ACT. ............................................. 11

    A.   Defendants are not debt collectors. ........................................ 11

    B.   Defendants Have a "Present Right of Possession" of the Truck and did not Breach the Peace in the Repossession of the Truck. ......... 13

        1.   A Secured Party is Permitted to use Self-Help Repossession under California Commercial Code § 9609. ....... 13

        2.   Defendants' repossession of the Truck is complete as soon

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

as they connect it to their tow truck, which happens out of Plaintiff's view. .......................................................................... 15

V.   DEFENDANTS DID NOT VIOLATE THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT. ................................ 16

VI.  DEFENDANTS DID NOT CONVERT THE TRUCK, AS PLAINTIFF DEFAULTED ON HIS LOAN PAYMENTS AND LOST OWNERSHIP IN THE TRUCK. ................................................... 17

VII. CONCLUSION.............................................................................. 18

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-6682-9614.1

ii

DEFENDANT LEON'S QUALITY ADJUSTERS RESPONSES TO PLAINTIFF'S DOCUMENT DEMAND (SET ONE)

# TABLE OF AUTHORITIES

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)............................................................. 10

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)............................................................. 10

*Clark v. Auto Recovery Bureau Connecticut, Inc.,*
    889 F. Supp. 543 (D. Conn. 1994)........................................ 2, 12, 13

*Hendersen v. Security National Bank,*
    72 Cal. App. 3d 764 (1977) ................................................. 3, 17

*James v. Ford Motor Credit Co.,*
    842 F. Supp. 1202 (D. Minn. 1994)....................................... 13

*Jordan v. Kent Recovery Services, Inc.,*
    731 F. Supp. 652 (D. Del. 1990)........................................... 2, 12, 13

*Manhattan Credit Union Co. v. Brewer,*
    232 Ark. 976 (1961)............................................................. 3

*Moore v. Regents of the Univ. of California,*
    51 Cal. 3d 120 (1990) .......................................................... 3, 17

*Pflueger v. Auto Fin. Group, Inc.,*
    1999 U.S. Dist. LEXIS 16701 (C.D. Cal. 1999) .................... 11

*Pflueger v. Auto Fin. Group, Inc.,*
    1999 U.S. Dist. LEXIS 16701 (C.D. Cal. April 26, 1999).................... passim

*Robi v. Five Platters, Inc.,*
    918 F. 2d 1439 (9th Cir. 1990) ............................................ 10

*Seibel v. Society Lease, Inc.,*
    969 F. SUpp. 713 (M.D. Fla. 1997)....................................... 12

*Siebel v. Society Lease, Inc.,*
    969 F. Supp. 713 (M.D. Fla. 1997)....................................... 2

*Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.,*
    860 F. Supp. 1448 (C.D. Cal. 1993)...................................... 10

*Williams v. Ford Motor Co.,*
    673 F.2d 717 (8th Cir. 1982) ............................................... 14

*Williams v. Ford Motor Co.,*
    674 F.2d 717 (8th Cir.1982) ................................................. 2

1

Statutory Authorities

2   15 U.S.C. § 1692a(6) ............................................................................. 11

3   15 U.S.C. § 1692f(6) .................................................................. 2, 11, 13, 14

4   15 U.S.C. 1692a(6) ......................................................................... 11, 13

5   15 USCS § 1692f(6) ............................................................................ 12

6   Cal. Bus. & Prof. Code § 7507.12 ........................................................ 17

7   Cal. Bus. & Prof. Code § 7507.12(a) ................................................ 3, 17

8   Cal. Civ. Code § 1788 et seq ............................................................... 17

9   Cal. Civ. Code § 1788.2(c) ................................................................. 18

10  Cal. Civ. Code §§ 1788.2(c) & ........................................................... 17

11  Cal. Civ. Code § 1788.2(d) .............................................................. 3, 18

12  Cal. Com. Code § 9609 .......................................................... 2, 11, 14, 15

13  Cal. Com. Code § 9609(a) ..................................................................... 2

14  Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq, and ......... 2

15  Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 et seq ........... 3

16

Rules and Regulations

17

Fed. R. Civ. P. 56 ......................................................................... 1, 10

18  Fed. R. Civ. P. 56(a) ......................................................................... 10

19  Fed. R. Civ. P. 56(c) ......................................................................... 10

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 | **MEMORANDUM OF POINTS AND AUTHORITIES**

2 | **I.**   **INTRODUCTION**

3 | The facts of this case are simple and straightforward.  Plaintiff Jimmie Brooks
4 | ("Plaintiff") financed the purchase of a 2003 Ford F-250 4x4 (the "Truck") in May
5 | 2014.  Gateway One Lending & Finance ("Gateway") provided Plaintiff with the
6 | loan.  Plaintiff made a down payment on the Truck, and he agreed to make monthly
7 | payments in the amount of $372 thereafter.  Plaintiff made timely payments until
8 | January 2015.  Starting in January 2015 through April 2015, Plaintiff made no
9 | payments towards the Truck loan.  Throughout that time, Gateway notified him that
10 | he missed payments.  Gateway also notified Plaintiff that one of the consequences of
11 | not bringing his loan payments current would be the repossession of the Truck.
12 | Plaintiff never made any payment to Gateway after his December 2014 payment.

13 | In April 2015, Gateway hired Defendant Leon's Quality Adjusters, Inc.
14 | ("Leon's") to repossess the Truck.  Gateway provided Leon's with Plaintiff's home
15 | address and work address.  Plaintiff worked at Bolthouse Farms ("Bolthouse") in
16 | Bakersfield, California.  Plaintiff parked his truck in the employee parking lot.  The
17 | entryway to the parking lot is open twenty-four hours a day, seven days a week.
18 | While Bolthouse's driveway from the main road has a gate, it is always in the open
19 | position.  Also, the employee parking lot has a gate, but it is also always in the open
20 | position.  That is where Plaintiff parked his truck. Plaintiff and Bolthouse's security
21 | both admit that anyone can drive into the employee parking lot.

22 | On April 22, 2015, Plaintiff was scheduled to work from 3:30 p.m. until 1:00
23 | a.m. on April 23, 2015.  That day, Plaintiff took his lunch break at 8:00 p.m. and left
24 | Bolthouse's property in the Truck.  He returned at 8:30 p.m.  Plaintiff parked the
25 | Truck in the open employee parking lot.

26 | That day, Leon's employee, Defendant Tony Rodriguez ("Rodriguez"), went
27 | to Bolthouse during the daylight hours to see what type of parking facility Bolthouse
28 | had at its property.  He observed that the parking lot was indeed open, and that he

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

1  would simply need to drive into the parking lot, connect the Truck, and drive out.

2  That is exactly what he did.  In the words of Bolthouse Farms main security guard, a

3  witness who saw a video of the repossession, this was a "very professional

4  repossession," and Defendants did an "amazing job." Indeed Plaintiff did not

5  observe any of this, as he was inside Bolthouse's warehouse, out of sight of the

6  Truck.

7       After Rodriguez drove away from Bolthouse's property with the Truck

8  connected to his tow truck, Plaintiff found Rodriguez and the Truck.  Plaintiff asked

9  Rodriguez if he could remove his personal property from the Truck, and Rodriguez

10  allowed Plaintiff to take whatever he wanted to take.  Plaintiff told Rodriguez that

11  he understood why his truck had been repossessed, thanked Rodriguez for letting

12  him get his stuff out of the Truck, and he also told Rodriguez that he "was cool."

13  Plaintiff and Rodriguez shook hands.  This lawsuit ensued.

14  **II.    STATEMENT OF FACTS**

15      **A.    Plaintiff Finances the Truck with Gateway and Defaults on His**

16          **Loan.**

17      In May 2014, Plaintiff financed the purchase of a red, 2003 Ford Super Duty

18  F-250 extended cab truck (the "Truck").  (Statement of Undisputed Facts ("SUF")

19  No. 1.)  Plaintiff financed the Truck.  (SUF No. 2.)  Plaintiff's loan came through

20  the car dealership where he bought the Truck.  (SUF No. 3.)  Plaintiff sent his

21  payments to Gateway One Lending & Finance ("Gateway").  (SUF No. 4.)

22      Plaintiff's monthly payments were $372.  (SUF No. 5.)  Plaintiff made his

23  payments at the first of the month through an online payment system using a debit

24  card.  (SUF No. 6.)  From April 2014 until January 2015, Plaintiff made timely

25  payments.  (SUF No. 7.)

26      From January 2015 through April 2015, Plaintiff did not pay his monthly

27  payments or any of previously missed payments.  (SUF Nos. 8-11.)  By April 2015,

28  Plaintiff missed four consecutive payments.  (SUF No. 12.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  **B.   Gateway Notifies Plaintiff that it will Repossess the Truck and**
2       **hires Leon's.**

3       On or around April 15, 2015, Gateway emailed Plaintiff that if he did not get
4  caught up with his payments and the additional fees, it would repossess the Truck.
5  (SUF No. 13.)  On April 16, 2015, Gateway hired Defendants Leon's Quality
6  Adjusters, Inc. ("Leon's") and Tony Rodriguez[1] ("Rodriguez") (collectively
7  "Defendants") to repossess the Truck.  (SUF No. 14.)  Gateway provided
8  Defendants with Plaintiff's home address and place of employment.  (SUF Nos. 15-
9  16.)  On April 17, Rodriguez drove by Plaintiff's work and home addresses.  (SUF
10  No. 17.)

11  **C.   Plaintiff Conceals the Location of the Truck.**

12       On April 19, 2015, Rodriguez went to Plaintiff's home and spoke to a
13  neighbor. (SUF No. 25.) The neighbor told him that the Truck has not parked at
14  Plaintiff's residence in the past three weeks.  (SUF No. 25.)  On April 20, 2015,
15  Rodriguez went back to Plaintiff's home and spoke to a woman, who told him that
16  Plaintiff did not live at that address.  (SUF No. 26.)  On April 22, 2015, Gateway
17  notified Defendants that the Truck's GPS coordinates indicated that Plaintiff was at
18  the home address that it had on file around 7:15 p.m. on April 21, 2015.  (SUF No.
19  27.)  Plaintiff denied concealing the location of the Truck.  (SUF No. 28.)

20  **D.   Bolthouse's Employee Parking Lot is Open 24/7.**

21       In April 2015, Plaintiff worked at Bolthouse Farms ("Bolthouse") in
22  Bakersfield, California, which is located at 7200 East Brundage Lane.  (SUF Nos.
23  29-30.)  To enter Bolthouse, Plaintiff drove east on East Brundage Lane, and then
24  turned north (left) on to Bolthouse's driveway.  (SUF No. 31.)  Plaintiff parked the
25  Truck on the west side of Bolthouse in the employee parking lot.  (SUF No. 32.)

26  _____

27  [1] Leon's employed Rodriguez as a repossessor.

28

1      To enter the employee parking lot, Plaintiff turned left into the parking lot;

2  this is about fifty yards from the turn off of East Brundage Lane. (SUF No. 33.)

3  There is a black iron gate at the entryway of Bolthouse off of Brundage Lane, which

4  was open when Plaintiff entered Bolthouse on April 22, 2015.  (SUF No. 34.)  The

5  gate at the entryway of Bolthouse from Brundage Lane is always open. (SUF No.

6  35.)

7      Once Plaintiff passed through the black iron, open gate, there are two

8  entryways into the employee parking lot on the left (west) side.  (SUF No. 36.)

9  Both of these entryways are south (or just before) the security guard shack.  (SUF

10  No. 37.)

11      On April 22, 2015, Plaintiff's work shift started at 3:30 p.m. and ended at

12  1:00 a.m. (SUF No. 38.)  Plaintiff entered the southernmost entrance to the

13  employee parking lot that day. (SUF No. 39.)  There is not a gate or any other

14  barrier at the entryway from which Plaintiff entered into the employee parking lot.

15  (SUF No. 40.)  In other words, the two entryways that Plaintiff drove through to

16  park the Truck were both open on April 22, 2015.  (SUF No. 41.)  Plaintiff admits

17  that anyone can drive into Bolthouse's driveway, turn left, and enter the parking lot.

18  (SUF No. 44.) Bolthouse's main security guard/contact and another Bolthouse guard

19  also admit that it is impossible to discern whether the vehicle entering and parking

20  in the employee lot is a Bolthouse employee. (SUF Nos. 21 & 43.)

21      Plaintiff took a lunch break at 8:00 p.m. that day. He left Bolthouse's property

22  in the Truck. (SUF No. 45.)  Plaintiff returned from his lunch break at 8:30 p.m.

23  parked in the exact same spot that he previously parked in.  (SUF No. 46.)

24      **E.      Rodriguez Connects the Truck and Repossesses it without any**

25  **        issues.**

26      On April 22, 2015, Rodriguez parked his tow truck on East Brundage Lane

27  and walked into Bolthouse's employee parking lot to confirm the Truck's make,

28  model, and license plate information.  (SUF No. 48.)  It matched the information

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  that he had on the Truck.  (*Id.*)

2  Rodriguez went back to the tow truck, called Leon's president, Leon

3  Scroggins ("Scroggins"), and explained to him that Bolthouse's gates were open and

4  that no guard was present or visible.  (SUF No. 49.)  Scroggins told Rodriguez that

5  if he could connect the Truck without any conflict or problems, then to proceed and

6  repossess the Truck.  (SUF No. 50.)

7  Bolthouse's security guard Lucia Jimenez ("Jimenez") was stationed at the

8  front guard shack at the time Rodriguez entered Bolthouse's property.  (SUF No.

9  51.) Jimenez saw an unmarked tow truck enter the driveway of Bolthouse from

10  Brundage Lane, and then enter the employee parking lot through the first entrance

11  closer to Brundage Lane (south entrance).  (SUF No. 52.) Jimenez estimated that

12  Rodriguez entered the driveway at approximately 7-10mph. (SUF No. 53.)  Jimenez

13  saw the tow truck back into the parking lot after he turned around in the driveway.

14  (SUF No. 54.) Jimenez never left her post at the guard shack at any time during this

15  repossession. (SUF No. 58.) Jimenez did not see the tow truck inside the employee

16  parking lot because other vehicles blocked her view. (SUF No. 59.) She never saw

17  the tow truck driver, Rodriguez. (SUF No. 60.)

18  Jimenez then called Sabrina McEntire ("McEntire"), another security guard

19  working that night, to advise her that a tow truck entered the lot and to ask her to go

20  check why it was on Bolthouse's property.[2] (SUF No. 55.)

21  Rodriguez connected the Truck without any problems.  (SUF No. 61.) At the

22  time he repossessed the Truck, Bolthouse Farms had an employee shift change, and

23  there were people going in and out of Bolthouse Farms. (SUF No. 62.) Rodriguez

24  did not see or hear anyone try to stop him. (SUF No. 63.) No Bolthouse Farms

25  _____

26  [2] McEntire was the supervisor of Jimenez and Lewis Richardson, another Bolthouse
Farms' security guard, and she reported to AJ Bajwa ("Bajwa"). (SUF No. 56.) On

27  the night of the repossession, McEntire's duties were to watch the monitors in the
central monitoring station, which is directly behind (or to the north) of the guard

28  shack that Jimenez manned. (SUF No. 57.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  employee complained to security that a tow truck almost ran them over. (SUF No.

2  64.) In addition, Jimenez did not see anyone in front of the parking lot driveway as

3  Rodriguez drove out of it. (SUF No. 69.) And Rodriguez never saw or heard any

4  security guards the entire time that he was on Bolthouse Farms' property.[3] (SUF No.

5  65.) By the time McEntire came out of the rear guard shack, Rodriguez was already

6  leaving, and it was too late to stop him. (SUF No. 66.) Jimenez observed McEntire

7  run after Rodriguez as he drove out of Bolthouse Farms, and she testified that

8  McEntire never got close to him. (SUF No. 68.) Jimenez estimated that Rodriguez

9  drove out of Bolthouse at approximately 8-10mph. (SUF No. 67.)

10       After connecting the Truck to his tow truck, and after he had already driven

11  off Bolthouse's property, Rodriguez continued driving on to East Brundage Lane.

12  (SUF No. 72.)  Rodriguez drove about a mile away, pulled over to fully secure the

13  Truck to the tow truck, and called the Kern County Sheriff's Department to report

14  that he had repossessed the Truck.  (SUF Nos. 73-74.)

15       F.    **Plaintiff Learns that the Truck has been towed away, but he does**

16              **not actually observe it happen.**

17       Around 9:30 p.m., a Bolthouse employee went to Plaintiff's work area and

18  told him that someone had taken off with the Truck. (SUF No. 75.)  Plaintiff did not

19  actually observe the Truck get towed away. (SUF No. 76.)  Plaintiff went out to the

20  parking lot immediately after hearing that the Truck had been towed. (SUF No. 77.)

21  Plaintiff does not know what time the Truck actually got towed. (SUF No. 78.)

22  Immediately after running out to the parking lot and noticing that the Truck was

23  gone, he went to the guard shack to tell them that the Truck had been towed.  (SUF

24  No. 79.)  A security guard told Plaintiff that the tow truck came in through the same

25  open gate that Plaintiff used to enter the parking lot. (SUF No. 80.)

26  _____

27  [3] Jimenez did not make eye contact with Rodriguez, and she did not say anything to
    him. (SUF No. 70.) She also does not know which direction Rodriguez was looking
28  when he drove out of the parking lot. (SUF No. 71.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    After learning that the Truck had been towed by an unidentified person,

2  Plaintiff told the security guard that he was going to call 911 (SUF No. 81.);

3  however, Plaintiff did not call 911 when he was standing at the guard shack.  (SUF

4  No. 82.)  Despite being notified by Gateway that the Truck would be towed if

5  Plaintiff did not make up for the missed payments and penalties, and after the

6  security guard told him that the Truck had been towed, Plaintiff did not realize that

7  it had been repossessed.  (SUF No. 83.)

8    **G.     Plaintiff Searches for the Truck, Calls 911, and He Still Does Not**

9    **Think that the Truck Has Been Repossessed.**

10    After speaking with the guards at the security shack, Plaintiff's coworker,

11  Robert Gilstrap ("Gilstrap"), drove up to the shack in a golf cart to find out what had

12  happened.  (SUF No. 84.)  Plaintiff got into Gilstrap's golf cart, and they drove

13  around Bolthouse trying to locate the Truck.  (SUF No. 85.)  According to Plaintiff,

14  this happened around 9:45 p.m.  (SUF No. 86.)  After failing to find the Truck in the

15  golf cart, they got in Gilstrap's car and searched for the Truck off Bolthouse's

16  property.  (SUF No. 87.)

17    While Gilstrap and Plaintiff searched for the Truck, Plaintiff called 911.

18  (SUF No. 88.)  At about the time that he called 911, they saw the Truck, and

19  Plaintiff told the dispatcher that they had found the Truck, and he hung up.  (SUF

20  No. 89.)  Plaintiff further told the dispatcher that the Truck had been repossessed.

21  (SUF No. 90.)  Up to that point, Plaintiff continually denied knowing that someone

22  had repossessed the Truck.  (SUF No. 91.)  Despite this claim, he told the police

23  dispatcher to disregard because he saw the Truck attached to the tow truck and

24  stopped.  (SUF No. 92.)  Plaintiff never called the police again that night.  (SUF No.

25  93.)

26    **H.     Plaintiff finds Rodriguez and the Truck.**

27    At the time that Plaintiff found Rodriguez and the Truck, he and Gilstrap

28  pulled up next to Rodriguez.  (SUF No. 94.)  Gilstrap yelled at Rodriguez, "Hey,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  that's my truck!" (SUF No. 95.) Rodriguez pulled over and stopped. (SUF No.

2  96.) Rodriguez asked the driver for his name, and Gilstrap responded, "Jimmie

3  Brooks." (SUF No. 97.) The passenger (Plaintiff), who was on the phone, got out

4  of the car and approached Rodriguez and told him, "I'm Jimmie Brooks." (SUF No.

5  98.) Rodriguez also heard Plaintiff tell the Sheriff's Office that the Truck was being

6  repossessed. (SUF No. 99.)

7       Plaintiff next asked Rodriguez where he intended to take the Truck. (SUF

8  No. 100.) Rodriguez explained that he planned to take it somewhere locally, and

9  that Plaintiff would need to contact his finance company (Gateway) to find out

10  where the Truck would be located. (SUF No. 100.)

11  **I.     Rodriguez Allows Plaintiff to Remove his Personal Property from**

12  **the Truck.**

13       Plaintiff then asked permission to take some of his personal property out of

14  the Truck. (SUF No. 101.) Rodriguez asked Plaintiff for the Truck's keys, and

15  Plaintiff responded, "Sure. Sure thing." (SUF No. 102.) Once Plaintiff gave

16  Rodriguez the keys, Rodriguez allowed Plaintiff to take his personal items out of the

17  Truck. (SUF No. 103.) Even at this point, Plaintiff denied knowing that the Truck

18  had been repossessed.[4] (SUF No. 104.) After Plaintiff got the items that he wanted

19  out of the Truck, Plaintiff thanked Rodriguez, shook hands with him, and then he

20  left. (SUF No. 109.)

21  **J.     Rodriguez never used or threatened force against Plaintiff.**

22       At no time did Rodriguez use or threaten force or violence against Plaintiff.

23

24  _____

25  [4] Prior to meeting Plaintiff and while he fully secured the Truck to the tow truck,
Rodriguez saw a gun case inside the Truck. (SUF No. 105.) Before Plaintiff began
taking his stuff out of the Truck, Rodriguez asked him if the gun case had a gun

26  inside of it. Plaintiff responded yes. (SUF No. 106.) Rodriguez feared for his
safety, and he asked Plaintiff not to use the gun on him. (SUF No. 107.) Plaintiff

27  responded and admitted that he knew that the Truck had been repossessed, "No.
You're cool." (SUF No. 108.)

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   (SUF No. 110.)  And since Plaintiff did not observe Rodriguez connect the Truck,

2   he has no knowledge whether Rodriguez used "force" to remove the Truck.  (SUF

3   No. 111.)

4       **K.**    **Plaintiff has not produced any video surveillance of the Truck**

5                 **being connected and towed away.**

6        Plaintiff testified that Bolthouse's security cameras captured the Truck

7   repossession on video.  (SUF No. 112.)  Bajwa, Allied Barton's account manager

8   and head security officer for Bolthouse Farms, also saw a video of it.  (SUF No.

9   112.)  Plaintiff also testified that he saw a screen capture that depicted the Truck

10  connected to the tow truck.  (SUF No. 113.)  Plaintiff never produced a screen

11  capture.  (SUF. No. 114.)  Bolthouse failed to maintain the video, and Bajwa

12  believes that after eleven days it would have been automatically deleted from

13  Bolthouse's surveillance video system. (SUF No. 115.)

14      **L.**    **Despite Plaintiff's Claims That He Had No Idea that the Truck**

15                **Would be Repossessed, Plaintiff Conceals the Location of it for**

16                **Weeks.**

17       Plaintiff denied that, during the timeframe that he missed his payments, he

18  changed his parking habits in order to conceal the location of the Truck.  (SUF No.

19  116.)  Plaintiff testified that he always parked in front of his house.  (SUF No. 117.)

20  Plaintiff denied that he had knowledge of anyone ever coming to his house to

21  repossess the Truck.  (SUF No. 118.)

22       Despite Plaintiff's denials, on April 19, 2015, Rodriguez spoke to one of

23  Plaintiff's neighbors, who informed him that the Truck had not parked in the

24  driveway at Plaintiff's residence for the past three weeks.  (SUF No. 119.)  On April

25  20, 2015, Rodriguez went to Plaintiff's residence and spoke to a woman who said

26  that Plaintiff did not live there.  (SUF No. 120.)  On April 22, 2015, Leon's noted

27  that it had received the Truck's geo-coordinates from April 21, 2015 at 7:15 p.m.,

28  which showed the Truck being located at Plaintiff's residence.  (SUF No. 121.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-6682-9614.1            9
DEFENDANT LEON'S QUALITY ADJUSTERS RESPONSES TO PLAINTIFF'S DOCUMENT DEMAND (SET ONE)

1   Leon's determined that the person who answered the door at Plaintiff's residence

2   had been covering for him.  (SUF No. 122.)

3   **III.    SUMMARY JUDGMENT STANDARDS**

4          The Federal Rules of Civil Procedure provide for summary adjudication when

5   "the pleadings, the discovery and disclosure materials on file, and any affidavits

6   show that there is no genuine issue as to any material fact and that the movant is

7   entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  One of the principal

8   purposes of the rule is to dispose of factually unsupported claims or defenses.

9   *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

10         If the moving party does not bear the burden of proof at trial, he or she may

11  discharge this burden of showing that no genuine issue of material fact remains by

12  demonstrating that "there is an absence of evidence to support the non-moving

13  party's case." *Id.* at 325.  Once the moving party meets the requirements of Rule 56

14  by showing there is an absence of evidence to support the non-moving party's case,

15  the burden shifts to the party resisting the motion, who "must set forth specific facts

16  showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477

17  U.S. 242, 256 (1986).  Genuine factual issues must exist that "can be resolved only

18  by a finder of fact, because they may reasonably be resolved in favor of either

19  party." *Id.* at 250.

20         Moreover, upon a showing that there is no genuine issue of material fact as to

21  a particular claim or defense, the court may grant partial summary judgment.  Fed.

22  R. Civ. P. 56(a) & (b); *Wang Laboratories, Inc. v. Mitsubishi Electronics, America,*

23  *Inc.*, 860 F. Supp. 1448, 1450 (C.D. Cal. 1993).  The Court may grant partial

24  summary judgment of whole claims or defenses, or particular facts or issues within a

25  claim or defense. *Robi v. Five Platters, Inc.*, 918 F. 2d 1439, 1441-42 (9th Cir.

26  1990).  In the event the Court determines that there is a genuine dispute as to a cause

27  of action, Defendants request partial summary judgment in the alternative.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

IV.   **DEFENDANTS DID NOT VIOLATE THE FAIR DEBT COLLECTIONS PRACTICES ACT.**

Plaintiff alleges that Defendants violated 15 U.S.C. § 1692f(6) under the Fair Debt Collections Practices Act ("FDCPA").  15 U.S.C. § 1692f(6) states, in pertinent part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: (6) Taking or threatening to take any nonjudicial action to effect dispossession . . . of property if – (A) there is not present right to possession of the property claimed as collateral through an enforceable security interest[.]

Plaintiff's claim fails for the following reasons: (1) Defendants are not "debt collectors," as it is defined at 15 U.S.C. § 1692a(6); (2) Defendants, under Gateway's authority, had a "present right to possession" of the Truck; and (3) under California Commercial Code § 9609, Defendants did not cause a "breach of the peace."

**A.    Defendants are not debt collectors.**

15 U.S.C. 1692a(6) defines a debt collector as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 808(6) [15 USCS § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

In other words, a debt collector is a person who "(1) **regularly** collects or attempts to collect consumer debts owed to others; or (2) uses any instrumentality of interstate commerce or mails in a business whose principal purpose is collecting consumer debts." *Pflueger v. Auto Fin. Group, Inc.*, 1999 U.S. Dist. LEXIS 16701, *12 (C.D. Cal. 1999).  Courts interpreting this language have concluded that the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-6682-9614.1                                   11
DEFENDANT LEON'S QUALITY ADJUSTERS RESPONSES TO PLAINTIFF'S DOCUMENT DEMAND (SET ONE)

1  term "debt collector" does not apply to repossession companies. *See id.* (*citing*

2  *Jordan v. Kent Recovery Services, Inc.*, 731 F. Supp. 652, 657 (D. Del. 1990); *Clark*

3  *v. Auto Recovery Bureau Conn., Inc.*, 889 F. Supp. 543 (D. Conn. 1994); *Seibel v.*

4  *Society Lease, Inc.*, 969 F. SUpp. 713 (M.D. Fla. 1997).

5      In *Pflueger*, plaintiffs entered into an auto loan agreement with defendant

6  auto finance company.  1999 U.S. Dist. 16701 at *2.  Plaintiffs became delinquent

7  in their payments.  *Id.*  The auto finance company authorized a repossession

8  company to repossess the car.  *Id.* at *3.  The auto finance company gave the

9  repossession company a description of the car and the plaintiffs' home and work

10  addresses.  *Id.*  The repossession company went to plaintiffs' residence, yelled

11  profanities and screamed at the resident to open the house, threw rocks at the

12  windows of the house, and this lasted for fifteen to twenty minutes.  *Id.* at *5-6.  The

13  repossess company employees then put a club on the steering wheel and pulled

14  wires in the engine.  *Id.*  The plaintiffs filed suit thereafter.

15      The district court in *Pluegler* granted defendant's motion for summary

16  judgment with respect to plaintiffs' FDCPA claim, finding that the repossession

17  company was not a debt collector for purposes of the FDCPA.  It specifically found

18  that a plain reading of the statute excludes repossession companies from the

19  definition of a "debt collector."  *Id.* at *10-11.  It further provided that 15 U.S.C.

20  1692a(6):

21        indicates that the term 'debt collector' *also* includes an enforcer of a
security interest for purposes of § 1692f(6).  Such a purposeful

22        inclusion for one section of the FDCPA implies that the term 'debt
collector' does not include the enforcer of a security interest for any

23        other section of the FDCPA . . . .  It thus appears that Congress
intended an enforcer of a security interest, such as a repossession

24        agency, to fall outside the ambit of the FDCPA except for the
provisions of § 1692f(6).

25

26  *Id.* at 11 (emphasis in original) (*citing Jordan, supra*, 731 F. Supp. at 657).

27      In finding that the repossession company was not a "debt collector,"  the

28  district court concluded that the repossession company's principal business purpose

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   was to collect collateral and not money.  It also found that the repossession company
2   did not "regularly collect debts for others for others," thereby excluding liability
3   under the FDCPA.  *Id*. at * 14 (*citing Jordan, supra*, 771 F. Supp. at 660).

4        In the present case, Gateway hired Leon's solely to repossess the collateral
5   that secured its loan to Plaintiff, *i.e.* the Truck (SUF No. 14).  Gateway did not hire
6   Leon's to collect money.  And Defendants did not collect money.  They simply
7   repossessed the Truck, which was the collateral that secured the loan.  (SUF Nos.
8   47-74.) Further, Leon's has never collected money. (SUF No. 123.)

9        **B.**    **Defendants Have a "Present Right of Possession" of the Truck and**
10       **did not Breach the Peace in the Repossession of the Truck.**

11       A debt collector can also include an enforcer of a security interest under 15
12  U.S.C. § 1692f(6).  *Pflueger*, 1999 U.S. U.S. Dist. LEXIS at *11 (*citing Jordan*, 731
13  F. Supp. at 657).  15 U.S.C. § 1692f(6) prohibits: "Taking or threatening to take any
14  nonjudicial action to effect dispossession or disablement of property if – (A) there is
15  no present right to possession of the property claimed as collateral through an
16  enforceable security interest."  Therefore, the issue for the Court is whether
17  Defendants had a "present right of possession" of the Truck.

18       When Defendants repossessed the Truck, it enforced the rights in the secured
19  property held by Gateway.  Because Defendants had a "present right to possession"
20  of the Truck, Plaintiff cannot establish a violation of Section 1692f(6).  To
21  determine whether the secured party (Gateway) had a "present right to possession"
22  of the collateral (Truck), the court must look at state law regarding security interests.
23  *Id*. at 16 (*citing Clark, supra*, 889 F. Supp. at 546; *James v. Ford Motor Credit Co.*,
24  842 F. Supp. 1202, 1207 (D. Minn. 1994)).

25       **1.**    **A Secured Party is Permitted to use Self-Help Repossession**
26       **under California Commercial Code § 9609.**

27       California Commercial Code § 9609 provides that a secured party may take
28  possession of the collateral without judicial process "if it proceeds without a breach

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   of the peace."  Cal. Comm. Code § 9609 (a)(1) & (b)(2).

2       California law (neither statute nor case law) defines "breach of peace."

3   Courts in other jurisdictions have, however, defined a "breach of the peace" to

4   involve incidents that tend to provoke violence.  *Pfluegler*, 1999 U.S. U.S. Dist.

5   LEXIS at *17 (*citing Williams v. Ford Motor Co.*, 673 F.2d 717, 719-720 (8th Cir.

6   1982)).

7       In *Williams*, the Court of Appeals determined that no breach of the peace

8   occurred when defendant repossession company towed plaintiff's vehicle in the

9   middle of the night from her unenclosed (open) driveway after she defaulted on her

10  loan payments.  674 F.2d at 718.  Plaintiff heard the car being towed away and went

11  outside to yell at the defendants.  *Id.*  Plaintiff told the defendants that the car was

12  hers, that she had been attempting to bring the past due payments up to date, and

13  that the vehicle contained personal items that did not belong to her.  Defendant got

14  out of the tow truck, removed the items from the car, handed them to plaintiff, and

15  then drove away with the car.  *Id.* at 719.  Plaintiff testified that defendant was polite

16  during their encounter and did not make any threats toward her or do anything that

17  caused her to fear any physical harm.  *Id.*  The Court found that no breach of the

18  peace occurred when no objection was raised to the taking by the plaintiff, and the

19  repossession was accomplished without any incident that might tend to provoke

20  violence.  *Id.* at 720.

21       Unlike *Williams*, in *Pfluegler*, the district court denied summary judgment

22  because it found that a jury could determine that a breach of the peace arose from

23  the actions described above . 1999 U.S. Dist. LEXIS 16701 at *18.  This is because

24  the facts included defendants throwing rocks at the home and yelling obscenities.

25  *Id.*

26       Here, unlike *Williams* and *Pfluegler*, Defendants repossessed the Truck

27  without ever encountering Plaintiff through the entire time that Rodriguez drove into

28  Bolthouse and drove out of Bolthouse. (SUF Nos. 75-76.)  Rodriguez drove into the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-6682-9614.1                                14
DEFENDANT LEON'S QUALITY ADJUSTERS RESPONSES TO PLAINTIFF'S DOCUMENT DEMAND (SET ONE)

1    open parking lot and connected the Truck. (SUF Nos. 19, 20, 34, 35, 40, 41, 42, 43,

2    49, 61, 63, 65, 66.) In fact, Rodriguez walked inside the employee parking lot before

3    even driving into it, and no one said anything to him. (SUF No. 48.)  Like *Williams*,

4    Rodriguez acted professionally and never threatened or used force against Plaintiff.

5    (SUF No. 110.) (As discussed above, Plaintiff was not even present at the time

6    Rodriguez repossessed the Truck.)  Unlike *Pfluegler*, Rodriguez never yelled

7    obscenities and never threw rocks or any other objects at anyone.  The repossession

8    of the Truck was anything but hostile. The facts of this case cannot rise to the level

9    of a "breach of the peace."

10    Finally, Plaintiff's only encounter with Rodriguez occurred many minutes

11    after Rodriguez had connected the Truck and driven away with it, unlike the

12    scenario in *Williams*. (SUF Nos. 75- 89.) Thus, there was no "breach of the peace"

13    in the repossession of the Truck.[5]

14    **2.**    **Defendants' repossession of the Truck is complete as soon as**

15           **they connect it to their tow truck, which happens out of**

16           **Plaintiff's view.**

17

18

---

19   [5] Defendants anticipate that Plaintiff will argue that the Defendants breached the

20   peace because they ignored signage that stated no trespassing. This argument is totally devoid of substance and merit. First, repossession agencies, like Leon's,

21   typically repossess vehicles from private property, such as private residences, apartment complexes, private businesses, unlocked parking garages, etc. Second, a

22   criminal trespass in California requires entry onto property *without a right to do so*. Here, Defendants had a right to be on Bolthouse's property to repossess the Truck.

23   In addition, there must be a specific intent to interfere with or damage the owner's property. Here, Defendants did not have any intent to interfere with or damage

24   Bolthouse's property. In fact, no damage or interference occurred with Bolthouse's property. Further, Bolthouse's property is not gated or locked. Rodriguez drove into

25   open gates and back out of an open gate. Finally, no one from Bolthouse asked Rodriguez to leave the property. The fact that a property may have signs stating that

26   it is private property does not preclude a repossession company from repossessing a vehicle from an open property. Thus, signage at an open, un-gated parking lot, does

27   not give rise to a "breach of the peace" when a repossession company  enters to repossess a vehicle.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    California Business & Professions Code § 7507.12 provides in pertinent part,

2  "repossession is complete if any of the following occurs: . . . (2) The collateral

3  becomes connected to . . . the repossessor's tow vehicle[.]"  Cal. Bus. & Prof. Code

4  § 7507.12(a).  It further provides that "no person other than the legal owner may

5  direct a repossessor to release a vehicle[.]"  *Id.* at 7507.12(b).

6    In this case, Defendants completed repossession of the Truck as soon as they

7  connected the Truck to their tow vehicle.  This occurred out of Plaintiff's view.

8  (SUF No. 76.)  In fact, Plaintiff did not know that the Truck had been repossessed

9  until after Rodriguez had already left Bolthouse. (SUF No. 79.)  Plaintiff never saw

10  the Truck being connected to the tow truck at Bolthouse, and he obviously could not

11  object to it. (SUF No. 77.)

12    A security guard, not the "legal owner" of the Truck, yelled at Rodriguez as

13  he drove away from Bolthouse.  She had no authority to direct Rodriguez to release

14  the Truck.  Nonetheless, Rodriguez denied hearing anyone yell at him. (SUF Nos.

15  63, 65.)  Thus, the repossession ended long before Plaintiff found Rodriguez miles

16  away from Bolthouse's property.

17  **V.    DEFENDANTS DID NOT VIOLATE THE ROSENTHAL FAIR DEBT**

18  **COLLECTION PRACTICES ACT.**

19    California's version of the FDCPA is the Rosenthal Fair Debt Collection

20  Practices Act ("CA FDCPA").  California Civil Code § 1788 *et seq*. governs the

21  collection of "consumer debts" by "debt collectors."  Cal. Civ. Code §§ 1788.2(c) &

22  (f).  "Debt collector" includes any person who "in the ordinary course of business,

23  regularly, on behalf of himself or herself or others, engages in debt collection."  Cal.

24  Civ. Code § 1788.2(c).  The term "debt" means "money, property, or their

25  equivalent which is due or owing or alleged to be due or owing from a natural

26  person to another person."  Cal. Civ. Code § 1788.2(d).  Thus, a "debt" does not

27  include the enforcement of security interests.  *See Pfluegler*, 1999 U.S. Dist. LEXIS

28  at * 19.

**LEWIS**
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1     In *Pfluegler*, the district court found that a majority of the defendants'

2 repossession assignments consisted of possession collateral when a debtor was in

3 default or delinquent.  1999 U.S. Dist. LEXIS at *13.  Also, in that case, the

4 defendants engaged in collection of money in about 0.25% of its collection

5 assignments.  *Id*. at *14.  The Court determined that this is nowhere near what

6 would be required to be considered regularly in the business of debt collection.  *Id*.

7 at *19.

8     Leon's never engaged in debt collection.  (SUF No. 123.)  Therefore, it

9 cannot be considered to be "regularly" in the business of debt collection.

10 Accordingly, Defendants did not violate the CA FDCPA.

11 **VI.     DEFENDANTS DID NOT CONVERT THE TRUCK, AS PLAINTIFF**

12 **DEFAULTED ON HIS LOAN PAYMENTS AND LOST OWNERSHIP**

13 **IN THE TRUCK.**

14     To prove conversion, Plaintiff would have demonstrate the following: (1)

15 Plaintiff owned/possessed/had a right to possess the Truck; (2) Defendants

16 intentionally and substantially interfered with Plaintiff's property by taking

17 possession of the Truck; (3) Plaintiff did not consent; (4) Plaintiff was harmed; and

18 (5) Defendants' conduct was a substantial factor in causing Plaintiff's harm.  CACI

19 2100.  With respect to the first element, that Plaintiff had a right to possession of the

20 Truck, "[t]o establish a conversion, plaintiff must establish an actual interference

21 with his ownership or right of possession . . . .  Where plaintiff neither has title to

22 the property alleged to have been converted, nor possession thereof, he cannot

23 maintain an action for conversion."  *Moore v. Regents of the Univ. of Cal.*, 51 Cal.

24 3d 120, 136 (1990).  Further, in a repossession case, there is a conversion if force or

25 threats of force are used to secure possession of the vehicle.  *Hendersen v. Security*

26 *Nat'l Bank*, 72 Cal. App. 3d 764, 770 (citations omitted).

27     The facts demonstrate that Plaintiff did not have a right to possession of the

28 Truck.  Starting in January 2015, Plaintiff became delinquent on the Truck's loan

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-6682-9614.1
17
DEFENDANT LEON'S QUALITY ADJUSTERS RESPONSES TO PLAINTIFF'S DOCUMENT DEMAND (SET ONE)

1   payments.  (SUF No. 8.)  Plaintiff continued to miss his auto payments through

2   April 2015.  (SUF Nos.9-12.)  Gateway notified him through that time that he had

3   missed payments and needed to come current with the payments and fees.  (SUF No.

4   13.)  Plaintiff never came current.  (SUF No. 13.)  Gateway notified Plaintiff that

5   they would repossess the Truck.  (SUF No. 13.)  Plaintiff evaded and tried to

6   conceal the location of the Truck, demonstrating that he knew that the Truck would

7   be repossessed.  (SUF Nos. 25-27, 122.)  In sum, Plaintiff had no right to possess

8   the Truck, and Gateway hired Defendants to repossess the collateral that secured its

9   loan – the Truck.  (SUF No. 14.)

10         As such, without satisfying the first element of a conversion claim, this claim

11   is subject to summary judgment.

12   **VII.  CONCLUSION**

13         Based on the foregoing, Defendants respectfully request that this Court grant

14   summary judgment in their favor against Plaintiff, or in the alternative summary

15   adjudication on Plaintiff's causes of action for violation of the FDCPA, CA FDCPA,

16   and conversion.

17   DATED: July 1, 2016              CARY L. WOOD

18                                   ANKUR TARNEJA
                                     LEWIS BRISBOIS BISGAARD & SMITH LLP

19

20

21

22
                                     By: _____
23
                                     Ankur Tarneja
24                                   Attorneys for Defendants LEON'S
                                     QUALITY ADJUSTERS, INC., and
25                                   TONY RODRIGUEZ

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-6682-9614.1                              18
DEFENDANT LEON'S QUALITY ADJUSTERS RESPONSES TO PLAINTIFF'S DOCUMENT DEMAND (SET ONE)

## FEDERAL COURT PROOF OF SERVICE

Jimmie R. Brooks v. Leon's Quality Adjusters, Inc. - Case No. 1:15-CV-00965-JLT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    At the time of service, I was over 18 years of age and not a party to the action. My business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

    On July 1, 2016, I served the following document(s): **DEFENDANTS LEON'S QUALITY ADJUSTERS, INC. AND TONY RODRIGUEZ'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ANKUR TARNEJA WITH EXHIBITS A TO G; DECLARATION OF LEON SCROGGINS WITH EXHIBITS A TO C**

    The documents were served by the following means:

☒    (BY COURT'S CM/ECF SYSTEM) I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

    I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

    Executed on July 1, 2016, at Los Angeles, California.


_____
MONIQUE TALAMANTE

4842-6682-9614.1

DEFENDANT LEON'S QUALITY ADJUSTERS RESPONSES TO PLAINTIFF'S DOCUMENT DEMAND (SET ONE)