**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JIMMIE R. BROOKS, | ) Case No.: 1:15-cv-000965 - JLT |
| Plaintiff, | ) ORDER GRANTING DEFENDANTS' MOTION |
| | ) FOR SUMMARY JUDGMENT |
| v. | ) |
| | ) (Doc. 26) |
| LEON'S QUALITY ADJUSTERS, INC. and | ) |
| TONY RODRIGUEZ, | ) |
| | ) |
| Defendants. | ) |

Plaintiff Jimmie Brooks purchased a truck on credit that was financed by Gateway One Lending & Finance. Plaintiff agreed to make monthly payments to Gateway, which took a security interest in the truck. After Plaintiff defaulted on his loan, Gateway hired Leon's Quality Adjusters, which repossessed the truck while Plaintiff was at work. Plaintiff contends that, due to actions taken during the repossession, Defendants are liable for violations of the Fair Debt Collection Practices Act, California's Rosenthal Fair Debt Collection Practices act, and conversion. (Doc. 1 at 4-7)

Defendants assert Plaintiff is unable to succeed on his claims, and seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 26) The Court heard the oral arguments of the parties on August 9, 2016. For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED**.

///

///

1

**I.       Undisputed Material Facts**[1]

In May 2014, Plaintiff "financed the purchase of a 2003 model red Ford Super Duty F-250 extended cab truck."  (DUF 1)  Plaintiff agreed "to make a down payment and monthly payments through a loan" with Gateway One Lending & Finance.  (DUF 2, 4)  Plaintiff failed to make his loan payments in January, February, March, and April of 2015.  (DUF 8-12)  In mid-April 2015, Gateway notified "Plaintiff that if he did not get caught up with his payments and the additional fees, it would repossess the Truck."  (DUF 13)  On April 16, 2015, Gateway hired Leon's Quality Adjusters and submitted an "Order to Repossess."  (DUF 14; Doc. 26-3 at 5)

On April 18, 2015, "Rodriguez went by Plaintiff's home address and Bolthouse Farms," where Plaintiff was employed.  (DUF 18, 29)  Rodriguez did not enter the Bolthouse property, but "observed the employee parking lot."  (DUF 18, 22)  Rodriguez again went to Plaintiff's neighborhood the next day, and talked to one of Plaintiff's neighbors.  (Doc. 26-2 at 80, Brooks Depo. 81:6-11)

On April 22, 2015, Rodriguez returned to Bolthouse Farms property to repossess Plaintiff's truck.  (*See* DUF 48)  A black iron gate at the entryway of Bolthouse was open.  (DUF 34, 35)  There is not a physical gate "or any other barrier at the first entryway to the employee parking lot."  (DUF 40)  While there are security shacks at Bolthouse, "[t]he employee parking lot entry ways are situated before the security guard shack[s]."  (DUF 37)  Rodriguez parked on the street outside the property, and "walked into Bolthouse's employee parking lot," where he confirmed the "make, model, and license plate information" on the truck.  (DUF 48)  He then returned to his tow truck and drove onto the Bolthouse property.  (*See* DUF 52)

Rodriguez entered the driveway of Bolthouse Farms, and backed into the employee parking lot. (DUF 52)  Bolthouse security guard Lucia Jimenez, who "was stationed at the front guard shack," testified that she observed the tow truck on the driveway and estimated he was driving 7-10 mph.[2] (DUF 51-53) When Jimenez saw the tow truck backing into the parking lot, she called Sabrina McEntire, a security guard in the shack "directly behind . . . the guard shack that Jimenez maintained."

---

[1] The parties did not prepare a "Joint Statement of Undisputed Facts." Rather, each party provided their own facts. Defendants' undisputed facts will be identified as "DUF," while Plaintiff's undisputed facts will be identified as "PUF".

[2] At the hearing, Plaintiff's counsel indicated that Mr. Bajwa testified Rodriguez drive "at a high rate of speed." Mr. Bajwa **did not** say this.  In fact, he was unable to estimate the speed.  (Doc. 28 at 110)  Counsel is reminded of his obligation of absolute honesty with the Court.

(DUF 55, 57)  Jimenez lost sight of the tow truck while it was in the parking lot, because the vehicles of employees "blocked her view."  (DUF 59)

McEntire[3] testified that when Jimenez called, she "looked up at the camera" and saw that the tow truck was already leaving the parking lot with Plaintiff's vehicle.  (Doc. 28 at 94, McEntire Depo. 39:13-18)  When she exited the shack and spotted the tow truck, it was "leaving the south entrance" of the parking lot.  (*Id.* at 93, Depo. 34:4-8)  She asserted that she then went around the side of the building, and "started running up the exit side of the driveway…[,] yelling at the tow struck to stop, and it would not stop."  (*Id.*, 34:15-21)  In addition, McEntire reported she waved her hands in the air and yelled loudly.  (*Id.*, 34:22-35:4)  At that time, McEntire said she "was looking at the rear of Mr. Brooks' vehicle, and the tow truck "was driving down towards the end of the driveway."  (*Id.*, 35:3-6, 22-23)  She never made eye contact with the driver and testified she did not know if she was yelling loudly enough for the driver to hear her.  (*Id.*, 36:7-9, 37:3-10) McEntire reported the tow truck went out of the south lane, into the wrong direction.  (*Id.*, 35:13-15)  "[A]fter he made the turn, he started accelerating."  (*Id.* at 95, Depo. 42:14-15)  McEntire estimated that "[i]t was less than a minute everything happened."  (*Id.* at 96, Depo. 49:22-23)

The entire process of entering the parking lot, attaching the vehicle to the tow truck, and exiting the lot took less than a minute.  (Doc. 28 at 96; McEntire Depo. 49:22-23; Doc. 28 at 109, Bajwa Depo. 23:11-13 [testifying the security video showed "from the time he came in, hooked it [up], and went out happened less than 40 seconds"])  After exiting the Bolthouse Property, Rodriguez pulled over on the road.  He testified that he did not go straight to the tow yard because he had not put on chains, straps, or

---

[3] Mr. Bajwa characterizes McEntire's actions differently than McEntire.  For example, he claims that McEntire first saw driver's side of the tow truck after she ran out onto the parking lot.  However, Mr. Bajwa's testimony is based upon his recollection after viewing the video of the event. (Doc. 107 at 143)  Ms. McEntire is better situated to know what she saw.  Indeed, though the video is admissible, Mr. Bajwa's characterization about what he saw on the video, is not.

Likewise, at the hearing, Plaintiff's counsel relied upon the testimony Ms. Jimenez and the drawing attached to her deposition to describe when Ms. McEntire saw as she left the guard shack.  Counsel argued that Rodriguez looked directly at McEntire as he exited the parking lot with the vehicle in tow.  However, this is a mischaracterization of Ms. Jimenez's testimony.  Indeed, at her deposition, Ms. Jimenez placed markings on the drawing—which was not to scale—as to where Ms. McEntire was at various times during the event. (Doc. 28 at 79, 143) Despite counsel's characterization, Ms. Jimenez did not testify that Ms. McEntire was position at the location marked "R" as the tow truck pulled away.  (Doc. 28 at 79). Rather, she said Ms. McEntire was exiting the guard shack at this time.  *Id.*  Following are the questions and answers: "And from what you could see, was it—was Sabrina [McEntire] in view of the two truck driver? A. Yes. Q. As he was coming out? A. Yes. Q. And why do you say that? A. Because when he would come out, if he would have – **when he was coming out, if he would have seen, he would have noticed her <u>coming out already of the guard shack</u>**." *Id.*, emphasis added.

3

running lights when he connected Plaintiff's truck.  (Doc. 28 at 60, Rodriguez Depo. 102:23-103:1)  In addition, Rodriguez called the Kern County Sheriff's office "no more than 15 minutes" later to report that he had repossessed the truck.  (DUF 74)

At approximately 9:30 p.m., Plaintiff was informed "that someone had taken off with the Truck." (DUF 75)  Plaintiff went to the security shack, where he was told "the Truck had been towed by an unidentified person."  (DUF 81)  Plaintiff told the security guard that he was going to call 911," but McEntire dissuaded him from doing so at that time.  (DUF 81; Doc. 27-2 at 32)

Plaintiff and a coworker, Robert Gilstrap, drove around Bolthouse property in a golf cart "trying to locate the truck."  (DUF 85)  When those efforts failed, "they got in Gilstrap's car and searched for the Truck off Bolthouse's property."  (DUF 87)  While searching his vehicle, Plaintiff called 911.  (DUF 88)  "About the same time that he called 911, they saw the Truck, and Plaintiff told the dispatcher that they found the Truck, and he hung up."  (DUF 89)

Rodriguez saw two men in the truck, and heard someone yell, "Hey, that's my truck!"  (DUF 95; Doc. 27-2 at 35)  Rodriguez "noticed that the passenger in Gilstrap's car was on the phone, and then he got out of the car and approached Rodriguez and told him, 'I'm Jimmie Brooks.'"  (DUF 98)  Plaintiff "asked permission to take some of his personal property out of the Truck."  (DUF 101)  Prior to allowing Plaintiff retrieving his property, Rodriguez asked Plaintiff for the keys to his vehicle.  (DUF 102)  Once Plaintiff did so, "Rodriguez allowed Plaintiff to take his personal items out of the Truck."  (DUF 103)  "At no time did Rodriguez use or threaten force or violence against Plaintiff."  (DUF 110)

## II.    Evidentiary Objections

Pursuant to Rule 56(c) of the Federal Rules of the Civil Procedure, "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See also Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (holding that it was an abuse of discretion for the district court, at the summary judgment stage, to consider information from an affidavit based on inadmissible hearsay rather than the affiant's personal knowledge).

///

///

4

### A.      Plaintiff's Objections

#### 1.      Scroggins Decl. Paragraph 3, Exhibit A

Plaintiff objects that "Exhibit A"—the "Order to Repossess" sent from Gateway to Leon's Quality Adjusters—is hearsay.  (Doc. 27-4 at 2)  However, commercial documents with independent legal significance, such as contracts, do not constitute hearsay.  *See United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004).  Here, the document memorializes the agreement between Gateway and Leon's Quality Adjusters for the repossession of Plaintiff's truck.  Indeed, that Gateway hired Leon's Quality Adjusters is undisputed by the parties.  (*See* Doc. 27-2 at 4)  Further, Leon Scroggins, the president and owner of Leon's Quality Adjusters, properly authenticated the document.  Accordingly, Plaintiff's objection to the exhibit is **OVERRULED**.

#### 2.      Scroggins Decl. Paragraph 4, Exhibit B and Paragraph 6, Exhibit C

Mr. Scoggins asserted, "Leon's maintained progress reports relating to the repossession jobs it was hired to do," and sought to authenticate the report related to the repossession of Plaintiff's truck as "Exhibit B."  (Doc. 26-3 at 2, Scoggins Decl. ¶ 4)  In addition, Mr. Scoggins reported that "Leon's completed a Notice of Taking Possession of Motor Vehicle," and sought to authenticate the Notice as "Exhibit C."  (*Id.*, ¶ 6)

Plaintiff argues Mr. Scoggins failed to properly authenticate the documents "since Exh. B is not a 'Progress Report,' but a Notice of Taking Motor Vehicle," and "Exh. C is not a 'Notice of Taking Motor Vehicle,' but a Progress Report."  (Doc. 27-4 at 2)  Plaintiff also objects to the documents as hearsay, and contends Mr. Scoggins fails to demonstrate personal knowledge as to the Notice because it "was prepared and signed by someone other than Scroggins."  (*Id.*)

As an initial matter, Mr. Scroggins explained he "inadvertently" submitted Exhibit B and C in the incorrect order.  (Doc. 29-1 at 2, Supp. Scroggins Decl. ¶ 2)  Plaintiff's objections on the grounds that the exhibits were erroneously mislabelled are **OVERRULED**.  On the other hand, as Plaintiff asserts, Mr. Scroggins does not demonstrate personal knowledge regarding the Notice, which appears to have been signed by Tony Rodriguez.  Therefore, Plaintiff's objection on the grounds of lack of personal knowledge is **SUSTAINED**.

Furthermore, the Progress Report fails to satisfy the business records exception to the hearsay

rule.  Pursuant to the business records exception, a document is admissible if its proponent shows the record (1) "was made at or near the time" of the event; (2) by a person with knowledge; (3) and kept in the course of a regularly conducted activity of a business or organization; and (4) kept in the course of a regularly conducted activity of a business."  Fed. R. Evid. 803(6).  In addition, the making of such records must be "a regular practice" of the business.  *Id.*  Mr. Scroggins reports only that the business "maintained progress reports relating to the repossession jobs it was hired to do," and "maintained a progress report" regarding the repossession of Plaintiff's truck.  (*See* Doc. 26-3 at 2, Scroggins Decl. ¶ 4)  While the title of a "progress" report suggests updates were made at or near the time of the recorded events, there is no affirmation that the updates were made by a person or persons with knowledge, or that Mr. Scroggins was the custodian of these records.  Thus, Plaintiff's objection to the Progress Report as impermissible hearsay is **SUSTAINED**.

### 3.     Scroggins Decl. Paragraph 5

Plaintiff objects to the entirety of Paragraph 5 as hearsay, because it is an "[o]ut of court statement of Rodriguez."  (Doc. 27-4 at 2)  Specifically, Mr. Scoggins asserted:

> On the evening of April 22, 2015, Rodriguez called me and described to me the area in which Plaintiff's truck was parked at Bolthouse Farms in Bakersfield, California.  I told Rodriguez that if he could connect Plaintiff's truck without any conflict or problems, then to proceed and repossess the truck.

(Doc. 26-3 at 2, Scroggins Decl. ¶ 5)

Hearsay statements are those "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).  Significantly, here, it does not appear Defendants are offering the statement from Rodriguez to Scroggins as proof of the matter asserted, rather they show only that the call occurred. Also, it appears the statement from Scroggins to Rodriguez is offered only to explain why Rodriguez proceeded with the repossession at Bolthouse Farms.  Therefore, Defendants' objection on the grounds of hearsay is **OVERRULED**.

### 4.     Scroggins Decl. Paragraph 7

Mr. Scroggins asserts that "Leon's has never been in the business of debt collection; it has only repossessed vehicles." (Doc. 26-3 at 2, Scoggins Decl. ¶ 7)  Plaintiff objects this statement is

"[c]onclusory" and lacks foundation.  (Doc. 27-4 at 2)

Notably, Mr. Scroggins asserted that he "was the President and owner" of Leon's Quality Adjusters, although the company is no longer in business.  (Doc. 26-3 at 2, ¶ 2)  Thus, Mr. Scroggins has the personal knowledge of the business' practices.  Accordingly, Plaintiff's objection on the grounds of lack of foundation is **OVERRULED**.

On the other hand, whether Leon's Quality Adjusters is a "debt collector" within the meaning of the Fair Debt Collection Practices Act and California's Rosenthal Fair Debt Collection Practices Act is an issue reserved for the Court.  *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("improper legal conclusions … are not *facts* and likewise will not be considered on a motion for summary judgment") (citation omitted, emphasis in original).  Accordingly, the objection to Mr. Scroggins' statement that the Leon's Quality Adjusters "has never been in the business of debt collection" is **SUSTAINED**.

### 5.     Objection to evidence in support of Material Fact No. 13

Defendants contend that in April 2015, "Gateway emailed Plaintiff that if he did not get caught up with his payments and the additional fees, it would repossess the Truck." (Doc. 26-1 at 3) Plaintiff's deposition testimony regarding his contact with Gateway was identified to support this fact.  (*See id.*)

Plaintiff objects to the evidence as hearsay, asserting the "[e]mail is offered for its truth with no exception." (Doc. 27-4 at 3)  Importantly, however, Defendants do not identify the email as evidence. Instead, they rely on Plaintiff's own testimony that he received an email from Gateway indicating his truck would be repossessed if he did not make payments.  (*See* Doc. 26-1 at 3 *citing* Doc. 26-2 at 13, Brooks Depo. 20:16-30)  An opposing party's statement offered against that party is not considered hearsay. Fed. R. Evid. 801(d)(2)(A ). Consequently, Plaintiff's objection is **OVERRULED**.

Plaintiff also objects that the evidence is irrelevant.  (Doc. 27-4 at 2)  However, objections on the grounds of relevance are inappropriate when related to evidence presented to support or oppose summary judgment, because the Court must determine whether a fact is relevant and material as part of "the summary judgment standard itself."  *See Burch*, 433 F. Supp. 2d at 1119.  Therefore, Plaintiff's objection on the grounds of relevance is **OVERRULED**.

### 6.     Objection to evidence in support of Material Fact No. 17

7

1   Defendants assert that "Bolthouse Farms' security has no way of knowing whether a vehicle

2   that enters the employee parking lot is a Bolthouse Farms employee." (Doc. 26-1 at 5)  In support of

3   this assertion, Defendants identify the deposition testimony of Amanjot Bajwa, a security manager

4   stationed at Bolthouse Farms. (*Id.*, citing Bajwa Depo. 15:3-13) Specifically, Mr. Bajwa testified: "if

5   you see the main parking lot, it's -- there is no way to stop cars. It's not an arm access to the main

6   parking lot.  So if you come in your vehicle and you just drive down to the main parking lot, there is no

7   way we would know that whether you work at Bolthouse or not because you just took your car and you

8   went in." (Doc. 26-2 at 109, Bajwa Depo. 15:7-13)  Mr. Bajwa added, "Tow trucks are a red flag

9   because it's a tow truck. You can see it's a tow truck."  (*Id.*, 15:15-16)   Plaintiff objects the statement

10   is "[i]n admissible lay opinion, and "[m]ore prejudicial than probative, since taken out of context."

11   (Doc. 27-4 at 3)

12   A lay witness may testify only as to those opinions or inferences that are "(a) rationally based

13   on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the

14   determination of a fact in issue, and (c) not based on scientific, technical, or other specialized

15   knowledge within the scope of Rule 702." Fed. R. Evid. 701.  Mr. Bajwa's statements are based upon

16   his observations of the parking lot and his ability to determine whether vehicles that entered belonged

17   to someone working for Bolthouse.  In addition, the statement is helpful to the Court because it

18   provides information regarding the ease of access—such as whether there is a gate or arm barrier—to

19   the parking lot.  Further, the statement is "not based on scientific, technical, or other specialized

20   knowledge."  Accordingly, Plaintiff's objection that it is impermissible lay opinion is **OVERRULED**.

21   Moreover, Plaintiff has not explained how the statement is "more prejudicial than probative," if

22   taken out of context.  Regardless, the Court has reviewed the statement— both in isolation and in

23   context of the testimony given about the parking lot and Bolthouse's policies—and finds its probative

24   value outweighs any prejudice to Plaintiff.  Thus, Plaintiff's objection is **OVERRULED**.

25   7.   Objection to evidence in support of Material Facts No. 25 and 119[4]

26   Defendants contend, "On April 19, 2015, Rodriguez went to Plaintiff's home and spoke to a

27

28

---

[4] Defendant's material facts numbers 25 and 119 are identical.  (*See* Doc. 26-1 at 5, 19)

8

neighbor, who told him that the Truck [w]as not parked at Plaintiff's residence in the past three weeks." (Doc. 26-1 at 5)  In support of this, Defendants identify the Progress Report and Rodriguez's deposition testimony.  (*Id.*)  Plaintiff objects, asserting the statement is hearsay.  (Doc. 27-4 at 3)

As discussed above, the Progress Report fails to satisfy the business records exception to the hearsay rule.  On the other hand, the statement of the unidentified neighbor is not being offered for its truth; it is being offered to explain why Rodriguez completed the repossession at Bolthouse rather than at the home.  In any event, because there is no hearsay exception shown for the document, Plaintiff's objection is **SUSTAINED**.

### 8.   Objection to evidence in support of Material Facts No. 26 and 122

Defendants assert, "On April 20, 2015, Rodriguez went back to Plaintiff's home and spoke to a female, who told him that Plaintiff did not live at that address."  (Doc. 26-1 at 5)  In support of this, Defendants identify the Progress Report and Rodriguez's deposition testimony.  (*Id.*)  Plaintiff objects to the statement as hearsay.  (Doc. 27-4 at 3)

Rodriguez testified that he went to a location identified as Plaintiff's residence, but a woman answered the door and said "there's no one with that name living there."  (Doc. 26-2 at 81, Rodriguez Depo. 82:24-25)   Therefore, Defendants assert that "[a]n employee at Leon's determined that the person who answered the door at Plaintiff's residence had been covering for him."  (Doc. 26-1 at 20) Importantly, the statement of the unidentified woman is not being offered for the truth of the statement that Plaintiff did not live at the location, but rather to support the assertion that Plaintiff was attempting to conceal the truck's location.  Thus, Plaintiff's objection is **OVERRULED**.

### 9.   Objection to evidence in support of Material Fact No. 47

Defendants contend, "In the words of Bolthouse Farms' main security contact, Rodriguez 'did an amazing job,' and this was 'absolutely' a very professional repossession."  (Doc. 26-1 at 8-9)  In support of this assertion, Defendants cite the deposition testimony of Mr. Bajwa.  (*Id.*)  Plaintiff objects that the statement is "[i]nadmissible lay opinion."  (Doc. 27-4 at 3)

Mr. Bajwa testified that he believed that job was "amazing" because Rodriguez secured the truck and began to exit the parking lot in less than 40 seconds.  (Doc. 28 at 109, Bajwa Depo. 23: 11-13)  The fact that Mr. Bajwa was amazed is a description of his own feeling and is not within the realm

of an improper opinion.  However, there is no testimony to establish the basis of his opinion regarding whether the repossession was "professional," such as Mr. Bajwa observing numerous repossessions or familiarity with the process of securing vehicles to tow trucks.  .  *See* Fed. R. Evid. 701.  Therefore, Plaintiff's objection that it was "a very professional repossession" is **SUSTAINED** but that it was "amazing," is **DENIED**.

### 10.   Objection to evidence in support of Material Fact No. 80

Defendants contend that "[a] security guard told Plaintiff that the tow truck came in through the same open gate that Plaintiff used to enter the parking lot."  (Doc. 26-1 at 13)  Plaintiff contends this statement is "[i]nadmissible hearsay."  (Doc. 27-2 at 32; *see also* Doc. 27-4 at 3)  Notably, it does not appear that Defendants present the statement for the truth of the matter asserted: that Rodriguez used the same entrance as the Bolthouse Employees.  For this reason, the objection is **OVERRULED**.

## B.   Defendants' Objections

### 1.   Declaration of Jimmie Brooks

#### a.   *Sham affidavit*

Defendants contend that Plaintiff attempts to "create a dispute as to a material fact by submitting a self-serving declaration that contradicts his prior deposition testimony."  (Doc. 29-2 at 1-2, citing *Sheller v. Am. Med. Response, Inc.*, 2010 U.S. Dist. LEXIS 75845 (E.D. Cal. July 28, 2010)).

Under the "sham affidavit" rule, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Kennedy v. Allied Mutual Ins. Co.,* 952 F.2d 262, 266 (9th Cir. 1991). The Ninth Circuit explained, "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* Because of the jury's role in resolving questions of credibility, courts have urged caution when applying the sham affidavit rule. *Id.* (citing *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980)); *see also Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (explaining the sham affidavit rule has limited application "because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment").

To determine whether a declaration should be stricken as a sham, the Ninth Circuit requires the

1  court to "make a factual determination that the contradiction was actually a 'sham,'" and created

2  specifically to avoid summary judgment. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir.

3  2009). In addition, "the inconsistency between a party's deposition testimony and subsequent affidavit

4  must be clear and unambiguous to justify striking the affidavit." *Id.* at 998-99. The Court explained that

5  "minor conflicts between [a declarant's] earlier deposition testimony and subsequent declaration... do

6  not justify invocation of the sham affidavit rule." *Id.* at 999.

7      Defendants do not argue that statements in the declaration contradicts any of Plaintiff's prior

8  testimony, but rather that the statements "contradict[] Defendants' evidence." (Doc. 29-2 at 2)  For

9  example, Plaintiff asserts:

10     I had already ended my call with the police dispatcher before arriving across the street
       from the tow truck driver Rodriguez.  I had the phone in my hand still, but the call had
11     ended, so Rodriguez could not have "heard" any part of the conversation with the
       dispatcher.

12

13  (Doc. 27-1 at 3, Brooks Decl. ¶ 8)  Defendants contend this statement "contradicts Rodriguez's

14  testimony that he heard Plaintiff state to the Sheriff, 'It's not stolen. It's behind a tow truck. It's being

15  repossessed.'"  (Doc. 29-2 at 2)  Similarly, Defendants contend Plaintiff's declaration "contradicts

16  Rodriguez' testimony about what Plaintiff said to him."  (*Id.*)  However, statements that contradict

17  Defendants' evidence does not establish Plaintiff's declaration is a sham.  Rather, the contradictions

18  must lie between Plaintiff's prior deposition testimony and the subsequent declaration.  *See Van Asdale*,

19  577 F.3d at 999.  Because Defendants do not identify any inconsistencies between Plaintiff's testimony

20  and his declaration, the objection that Plaintiff's declaration is a sham is **OVERRULED**.

21                     *b.      Relevance*

22      Defendants object to nearly each paragraph in Plaintiff's declaration on the grounds of

23  relevance.  (*Id.* at 2-3)  As this Court previously observed, when evaluating a motion for summary

24  judgment, the court "cannot rely on irrelevant facts, and thus relevance objections are redundant."

25  *Burch*, 433 F. Supp. 2d at 1119.  Accordingly, Defendants' boilerplate objections to Paragraphs 2, 3, 4,

26  5, 6, 7, 8, 9, 10, 11, 12, and 13 on the grounds of relevance are **OVERRULED**.

27                     *c.      Objections to Paragraph 13*

28      In Paragraph 13 of the declaration, Plaintiff asserts: "Sometime after my repossession, I was at

1   the Bolthouse Farms security office and briefly saw a screen-still of the video surveillance footage of

2   the repossession, on the monitor of the Bolthouse security people.  I only saw this still shot once, and

3   never had custody of it, as I only saw it on a monitor."  (Doc. 27-2 at 4, Brooks Decl. ¶ 13)

4        Defendants contend that during the course of discovery, they "served a document request

5   asking for 'copies of any and all photographs, videotapes (including surveillance videos), or

6   documentary evidence of the incident at issue in the matter."  (Doc. 29-2 at 3) Plaintiff responded, "the

7   surveillance footage obtained by plaintiff from Bolthouse Farms does not show the incident."  (*Id.*,

8   emphasis omitted)  As a result, Defendants contend Plaintiff failed to produce the video, which is the

9   best evidence, and instead "relies on the memory of a security guard as to what a surveillance video

10   depicted," which is hearsay.  (*Id.*)

11        Notably, Plaintiff is not making a statement regarding what he saw on the screen or was told by

12   the security staff to prove the truth of the matter, as it is undisputed that his truck was towed by

13   Defendants.  Therefore, the hearsay objection is **OVERRULED**.

14              *d.*    *Objections to "Exhibit 1"*

15        Defendants move "to strike Exhibit 1 attached to Plaintiff's declaration."  (Doc. 29-2 at 2)

16   According to Plaintiff, "Exhibit 1 is a true and correct copy of the May 4, 2015 'Notice of Our Plan to

17   Sell Property' which [he] received from [the] lender, Gateway One Lending & Finance."  (Doc. 27-1 at

18   2, Brooks Decl. ¶ 4)  Defendants contend that "Plaintiff failed to produce the attached exhibit in

19   response to written document requests," and assert it should be stricken pursuant to Rule 37 of the

20   Federal Rules of Civil Procedure.  (Doc. 29-2 at 2)

21        Rule 37(c) "gives teeth" to the disclosure requirements of Rule 26(e) "by forbidding the use on

22   a motion or at trial of any information required to be disclosed by" that rule, unless the party's failure to

23   disclose the required information is substantially justified or harmless. *See Yeti by Molly Ltd. v.*

24   *Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.2001).  Significantly, here, though Plaintiff

25   attached "Notice of [the] Plan to Sell Property" to his declaration, he does not rely upon the exhibit—or

26   even refer to it—to support his opposition to the motion for summary judgment.  Thus, the Court will

27   not do so either.  Because Plaintiff does not rely upon the document, Defendants' motion to strike is

28   denied as **MOOT**.

2.     Declaration of Alexander Trueblood, Plaintiff's Counsel

a.     Paragraph 2, Exhibit 1

Mr. Trueblood requests that the Court take judicial notice of Exhibit 1, which he reports "is a true and correct copy of a printout from the 'Verify License' part of the website of the California Department of Consumer Affairs, Bureau of Security and Investigative Services, showing that Leon's Quality Adjusters, Inc. in Bakersfield, California was a California licensed repossession agency from 1998 until September, 2015, with license number RA-1231." (Doc. 28 at 2, Trueblood Decl. ¶ 2)

Defendants observe that Plaintiff did not "file[] a properly noticed pleading for request for judicial notice." (Doc. 28-2 at 3)  In addition, Defendants contend the document is "not authenticated" and the "printout is hearsay and offered for its truth with no exception." (*Id.*)

Despite the pleading flaws, the Court will consider the request for judicial notice, particularly because Defendants still received notice of the request and had an opportunity to respond.  The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).

The official records of the State of California, as contained in the Department of Industrial Relations' official website, are sources whose accuracy cannot reasonably be questioned, and judicial notice may be taken of facts on a website of a government agency. *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web"); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information on the website of a government agency); *United States ex rel. Dingle v. BioPort Corp.*, 270 F.Supp.2d 968, 972 (W.D. Mis. 2003) ("government documents are generally considered not to be subject to reasonable dispute . . . This includes public records and government documents available from reliable sources on the Internet").  As such, license verifications published by California's Department of Consumer Affairs, Bureau of Security and Investigative Services are subject to judicial notice.  Because the accuracy of the information cannot reasonably be questioned, Defendants' evidentiary objections are **OVERRULED** and Plaintiff's request for judicial

1   notice is **GRANTED**.

2              *b.*       *Paragraph 3*

3       Defendants object to this paragraph of the declaration, asserting Mr. Trueblood "[m]istates the

4   evidence" related to Rodriguez's Temporary Repossessor Registration. (Doc. 29-2 at 3)  Notably, Mr.

5   Trueblood is not a witness in this case and the Court will consider the evidence, rather than counsel's

6   descriptions of it.  Because Defendants' objection does not go to *admissibility* of the evidence, the

7   objection is **OVERRULED**.

8              *c.*      *Paragraphs 8-11 and Exhibits 7, 8, 9, and 10*

9       Defendants object to each of these paragraphs and the attached exhibits as irrelevant.  For the

10   reasons set forth above, such an objection is not well-taken related to evidence related to motions for

11   summary judgment.  Accordingly, Defendant's objections on relevancy grounds are **OVERRULED**.

12              *d.*      *Paragraph 12, Exhibit 11*

13       In paragraph 12 of his declaration, Mr. Trueblood seeks to authenticate "a drawing of the

14   Bolthouse Farms premises, used at all the depositions as Exhibit 1." (Doc. 28 at 4)  Defendants object

15   to the document as "hearsay" and contend "it is not authenticated." (Doc. 29-2 at 4)

16       Given Mr. Trueblood's status as Plaintiff's counsel and his appearance at each of the

17   depositions, the Court finds it is within his personal knowledge as to whether this document was used

18   at the depositions.  His assertion that is a "true and correct" copy of the deposition exhibit is sufficient

19   to authenticate the document.  Moreover, contrary to Defendant's assertions, it does not appear that the

20   drawing "is offered for its truth as an accurate depiction of Bolthouse Farms." (Doc. 29-2 at 4)

21   Rather, the image was used to help deponents identify their location and explain what they saw when

22   Rodriguez towed Plaintiff's truck.  Therefore, Defendants' objections are **OVERRULED**.

23     **C.**     **Conclusion**

24       To the extent that statements offered by either party are speculative or represent a legal

25   conclusion, the Court, as a matter of course, will not factor that material into the analysis. *See Burch*,

26   433 F. Supp.2d at 1119.  Rather, the Court's analysis relies only on evidence it has deemed admissible.

27   **III.**     **Legal Standards for Summary Judgment**

28

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party is required to tender evidence of

specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits.  *Id.* at 586 n.11; Fed. R. Civ. P. 56(c).  The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  In resolving a motion for summary judgment, the Court can only consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.  *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## IV.    Discussion and Analysis

### A.    Violations of the Fair Debt Collection Practices Act

Under the provisions of the FDCPA, debt collectors are prohibited "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).  In general, "[t]here are four elements to an FDCPA cause of action: (1) the plaintiff is a 'consumer' under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a 'debt collector' under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a-1692o." *Wheeler v. Premiere Credit of N. Am., LLC*, 80 F. Supp. 3d 1108, 1112 (S.D. Cal. 2015) (citing *Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004)).

Plaintiff contends Defendants are liable for a violation of 15 U.S.C. § 1692f(6).  (Doc. 1 at 4, ¶ 16)  In addition, Plaintiff asserts Defendants violated 15 U.S.C. §§ 1692d, 1692e, and 1692f, and

incorporates the claims "by reference" as part of his claim of violations of California's Rosenthal Fair Debt Collection Practices Act.  (*Id.* at 6, ¶¶ 28-30)  Defendants argue Plaintiff is unable to succeed on these claims because Leon's Quality Adjusters is not a "debt collector" within the meaning of the FDCPA.  (Doc. 26 at 2, 18-20)  Defendants contend also that Plaintiff fails to demonstrate a violation of 15 U.S.C. § 1692f because they "had a 'present right of possession' of the Truck."  (*Id.* at 20)

### 1.      Whether Defendants are "debt collectors" under the FDCPA

The FDCPA defines the term "debt collector" as including: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6); *see also Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013).  The determination of whether a party is a "debt collector" under the FDCPA "depend[s] upon the nature of the activities in the individual case," not whether a party calls itself a debt collector or a collection agency. *Romine v. Diversified Collection Servs., Inc*., 155 F.3d 1142, 1149 (9th Cir. 1998) (citing *Jenkins v. Heintz*, 25 F.3d 536, 539 (7th Cir. 1994)).

Notably, the parties appear to agree that Leon's Quality Adjusters did not engage in direct attempts to collect debts.  (*See* Doc. 26 at 19-20; Doc. 27 at 6)  However, Plaintiff contends the company " 'indirectly' collect[ed] payments from borrowers, and [was] paid for doing so, even if a repossession [was] not accomplished."  (Doc. 27 at 6)  As noted by Plaintiff, Rodriguez testified that he would "make contact" with people and say: "Either surrender the vehicle or pay your note or give me some information where the vehicle is at."  (Doc. 28 at 28, Rodriguez Depo. 32:15-21)  Rodriguez testified also, "I didn't ask for payment because I'm not the bank."  (*Id.* at 29-30, Rodriguez Depo. 33:25-34:1)  Plaintiff contends, "By adopting this policy of enforcing payments for the bank, and profiting from it, Leon's collects money "directly or indirectly" for others (15 U.S.C. § 1692a(6)), and has made itself the exception to the usual finding … that a repossession agency performing only repossessions does not fall within the general FDCPA definition of "debt collector."  (Doc. 27 at 6) (citing *Shannon v. Windsor Equity Group, Inc*., 2014 U.S. Dist. LEXIS 32259 (Mar. 12, 2014)).

In *Shannon,* Windsor Equity Group identified itself as a "loan servicing company."  *Id.*, 2014

U.S. Dist. LEXIS 32259 at *2.  The evidence before the court demonstrated Windsor "locate[d] people and collateral—primarily vehicles—for its clients who [had] a security interest in the collateral."  *Id.*  The company "also require[d] all of its skip-tracer case workers to "follow[] state and federal regulations regarding collection procedures," and advertised FDCPA compliance to prospective clients."  *Id.* at *3.  The court found Winsdor "offered its skip tracing, remarketing, and repossession services in order to help resolve consumer debts," and the company did "not deny performing these services for its clients on an ongoing basis."  *Id.* at *19.  Given the "skip tracing and other collection-related services in addition to its advertisements of these services," the Court concluded Winsdor was a debt collector within the meaning of the FDCPA.  *Id.*

In contrast, there is no evidence that employees of Leon's Quality Adjusters performed skip-tracing services, advertised FDCPA compliance for collections procedures or sought to obtain payment of the debt.  Although Plaintiff testified he did not direct people to pay their note or produce the collateral until the fourth "run," there is no evidence regarding how often this occurred, or whether it was a company policy. (*See* Doc. 28 at 28, Rodriguez Depo. 32:15-21) Indeed, Plaintiff's truck was repossessed without Plaintiff ever being told to that he had an option to pay his note.  There is no evidence that employees of Leon's Quality Adjusters regularly directed debtors to pay their debt.  Consequently, Plaintiff fails to present evidence to support a conclusion that Defendants are debt collectors within the meaning of the FDCPA.

Moreover, courts have determined repossession companies, such as Leon's Quality Adjusters, are not generally "debt collectors" subject to liability under the FDCPA.  *See, e.g., Montgomery v. Huntington Bank,* 346 F.3d 693, 699 (6th Cir. 2003) ("a repossession agency… does not fall within the definition of a 'debt collector'"); *James v. Ford Motor Credit Co.*, 47 F.3d 961, 962 (8th Cir. 1995) (repossession companies are not generally included in the definition of "debt collector" under Section 1692a(6)); *Nadalin v. Automobile Recovery Bureau, Inc.*, 169 F.3d 1084, 1085 (7th Cir. 1999) (observing the term "debt collectors" excludes repossessors and other enforcers of security interests); *Jordan v. Kent Recovery Serv., Inc.*, 731 F.Supp. 652, 656 (D. Del. 1990) ("an enforcer of a security interest, such as a repossession agency, falls outside the ambit of the FDCPA for all purposes, except for purposes of § 1692f(6)"). Because Defendants collected the *collateral* rather than the debt and are

not debt collectors as applied to provisions other than Section 1692f(6), as discussed below, Plaintiff is unable to succeed on claims for violations of the FDCPA under 15 U.S.C. §§ 1692d, 1692e.

### 2.    Violation of U.S.C. § 1692f(6)

Significantly, only for "the purpose of section 1692f(6)," the term "debt collector… also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of any security interests." 15 U.S.C. § 1692(a)(6). Through this provision, Congress "sought to proscribe the conduct of repossession agencies." *Jordan*, 731 F.Supp. at 657; *see also Piper v. Portnoff Assoc., Ltd.*, 396 F.3d 227 (3 rd Cir. 2005) ("even though a person whose business does not primarily involve the collection of debts would not be a debt collector for purposes of the Act generally, if his principal (sic) business is the enforcement of security interests, he must comply with the provisions of the Act dealing with non-judicial repossession abuses"). Specifically, under Section 1692f(6), repossession agencies and other enforcers of security interests are prohibited from:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if –
>
> > (a) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
> >
> > (b) there is no present intention to take possession of the property; or
> >
> > (c) the property is exempted by law from such dispossession or disablement.

15 U.S.C.A. § 1692f(6). Plaintiff contends Defendants violated Section 1962f(6)(A) because they did not have "a present right of possession." (Doc. 1 at 4, ¶ 16; Doc. 27 at 4-5)

To determine whether Defendants had a "present right to possession" of the collateral, the Court must look to state law regarding security interests. *See James v. Ford Motor Credit Co.*, 842 F. Supp. 1202, 1207 (D. Minn. 1994), *aff'd by James*, 47 F.3d 961 (8th Cir. 1995) (applying Minnesota state law to determine whether the repossession agency had a "present right to possession" of the collateral); *Clark v. Auto Recovery Bureau Conn., Inc.*, 889 F. Supp. 543, 546 (D. Conn. 1994) (considering Connecticut state law to determine whether the repossession company had a valid security interest); *see also Pflueger v. Auto Fin. Group, Inc.*, 1999 U.S. Dist. LEXIS 16701 at *15-17 (C.D. Cal. May 3, 1999) (applying California law to determine whether the repossession company had a present right to

possession of a vehicle).

Under California law, provisions of the California Commercial Code govern the circumstances under which a secured party has the right to repossession. Specifically, the Commercial Code provides that "[a]fter default, a secured party may do both of the following: (1) [t]ake possession of the collateral [and] (2) [w]ithout removal, render equipment unusable and dispose of collateral on the debtor's premises." Cal. Com. Code § 9609(a). A secured party may take possession of the collateral either pursuant to a judicial process, or "[w]ithout judicial process, if it proceeds without a breach of the peace." Cal. Com. Code § 9609(b). As noted in the "Official Comments" on the Commercial Code, "th[e] section does not define or explain the conduct that will constitute a breach of the peace, leaving that matter for continuing development by the courts." *See also* 4 Witkin, Summary of Cal. Law (10th ed. 2005), Secured Transactions in Personal Property, § 178, p. 745 (same).

Plaintiff contends that Defendants engaged in actions that constituted a breach of the peace because "any unlawful entry onto property constitutes a breach of the peace." (Doc. 27 at 13) (citing *Henderson v. Security Nat'l Bank*, 72 Cal.App.3d 764, 770 (1977)). In addition, Plaintiff asserts there were "loud objections" made "at the time of the repossession," and that "Rodriguez committed a breach of the peace by ignoring the objections" and "driving the wrong way down a one-way lane." (*Id.* at 14-15, emphasis omitted) (citing, *e.g.*, *Hartford Financial Corp. v. Burns,* 96 Cal.App.3d 591 (1979)). Further, Plaintiff contends that his lack of consent to the repossession and the "use of stealth or deception" support the conclusion that Defendants breached the peace. (*Id.* at 20-23) (citing, *e.g., Big Three Motors, Inc. v. Rutherford*, 432 So.2d 483, 485 (Ala. 1983); *Hester v. Bandy*, 627 So.2d 833, 841 (Miss. 1993)).

On the other hand, Defendants argue they did not breach the peace, because "[t]he repossession of the Truck was anything but hostile." (Doc. 26 at 22) Defendants observe that "[c]ourts in other jurisdictions have… defined a 'breach of the peace' to involve incidents that tend to provoke violence." (*Id.* at 21) (citing *Pflueger,* 1999 U.S. Dist. LEXIS 16701 at *12 (C.D. Cal. 1999); *Williams v. Ford Motor Co.*, 673 F.2d 717, 719-720 (8th Cir. 1982)). Further, Defendants contend the objections made by the security guard occurred after the repossession was complete, and "[s]he had no authority to direct Rodriguez to release the truck." (*Id.* at 23) (citing Cal. Business & Professions Code § 7507.12).

Accordingly, Defendants conclude Plaintiff is unable to demonstrate a breach of the peace, or that Defendants did not have a present right of possession.

a.      *Entry on Bolthouse Property*

Plaintiff observes that the Bolthouse Property has signs that indicate "No Repo Vehicles," "No Trespassing," "Private Property," and "Check With Guard Before Entering Plant."[5]  (Doc. 27 at 2, PUF 124-127)  According to Plaintiff, "The seminal California case is *Henderson v. Security Nat'l Bank*, 72 Cal.App.3d 764, 770 (1977)," because the court "made clear that 'any unlawful entry' will be a breach of the peace, including the breaking of a lock."  (*Id.* at 11)  Plaintiff argues, "In the case of defendants, the unlawful entry was the criminal trespass onto a heavily signed and guarded industrial property, with signs specifically prohibiting repossession vehicles."[6]  (*Id.*)

In *Henderson*, the plaintiff defaulted on a loan, and the bank that financed the loan sought to repossess his automobile. *Id.*, 72 Cal.App.3d at 768.  The bank hired "a licensed repossessor," who went to Henderson's home. *Id.* at 770. The court explained, "Viewed in the light most favorable to Henderson, the evidence discloses that his car was obtained by the repossessor by means of an unlawful entry, i.e., the breaking of the lock on his garage door." *Id.*  The car was repossessed and subsequently sold. *Id.* at 768.  Henderson then sued the bank for conversion and trespass, with each claim "based upon Henderson's contention (and later testimony) that in the repossession of his automobile the lock on his garage door had been broken." *Id.*  The bank "moved for a judgment of nonsuit," which was granted by the trial court as to the trespass claim. *Id.*  A jury concluded the bank was liable for conversion, and the court affirmed, explaining "there is a conversion if force or threats of force are used to [secure] possession of the automobile." *Id.* at 770 (citing *Manhattan Credit Co. v. Brewer*, 232 Ark. 976, 978 (1961)).

Plaintiff argues the unlawful entry in *Henderson* was found to be a breach of the peace. To the

---

[5] Rodriguez testified that he did not see these signs.  (Rodriguez Depo. 54: 3-5)  Thought the Court makes no finding as to the credibility of any witness, the location of the signs in relation to the entry and the small font size used on the signs (Doc. 28 at 125, 136) seems to make it unlikely that a driver would see them and be informed that tow trucks were prohibited.

[6] Despite counsel's characterization of the evidence, the signs required a visitor to check in at the guard shack *before entering the plant* not upon entry onto the parking lot. (Doc. 28 at 125, 134 ["CHECK WITH GUARD BEFORE ENTERING THE PLANT."])  Rather, Mr. Bajwa stated that entry onto the lot was unregulated. (Doc. 28 at 104)

21

contrary, the court found, "[H]e makes no contention whatever, in this court, that the judgment of nonsuit on the trespass cause of action was erroneously entered. According to well-established authority, the point will be deemed unmeritorious, or at least to have been abandoned or waived." *Id*. at 769.  Instead, the court determined *only* that the unlawful entry by breaking the lock on the garage door where the car was stored constituted a conversion and, therefore, there was a breach of the peace.  *See Henderson*, 72 Cal.App.3d at 770 (citing *Thompson v. Ford Motor Credit Company*, 324 F.Supp. 108, 115 (1971)); *see also Hartford Financial Corp. v. Burns*, 96 Cal.App.3d 591, 600 (1979) ("The only rule of law to be deduced from *Henderson* is simply that the right to immediate possession by a secured party upon default must be effectuated through judicial action rather than self-help if *force or threats of force* are necessary to secure possession of the collateral without judicial intervention") (emphasis added).  In contrast, here there was no use of force—or threat of force—by Rodriguez in the course of repossessing Plaintiff's vehicle. Though there were signs indicating that tow trucks were not permitted on the property, Rodriguez was not required to open a gate, or move any physical barrier to enter the parking lot where Plaintiff's vehicle was located.  (DUF 40)  At most, he committed a trespass onto the property of a third party.

Notably, Plaintiff has identified no cases—and the Court has located none—where the mere entry upon the property of a third party constitutes a breach of the peace under California law.  Indeed, in *Van Dorn v. Couch*, the court observed that the owner of personal property "may go upon [the] land [of another] it to retake it without committing a trespass if he can do so without committing an assault or breach of the peace." *Id.*, 21 Cal.App.2d Supp. 749, 755 (1937).  This suggests that under California law, mere entry upon the property of another, or a trespass, to take possession of property is not sufficient to establish a breach of the peace occurred.  Moreover, though there were signs indicating tow trucks were not welcome on the Bolthouse property, this does not mandate a finding that there was a breach of the peace.  Were this to be true, any debtor in default who is informed that a vehicle will be repossessed could simply place "no trespassing" and "no repo vehicles" signs on their property, or the property of third parties where the vehicles were parked, to thwart repossession without judicial intervention.  Accordingly, Plaintiff fails to demonstrate the entry onto Bolthouse property alone to repossess the vehicle constitutes a breach of the peace.

<strong>b.</strong>      <em>Oral objections by Bolthouse security</em>

Plaintiff asserts, "Under California law, an objection by a debtor or third party, made and ignored, is also a breach of the peace. In *Hartford Financial Corp. v. Burns*, 96 Cal.App.3d 591 (1979), the court held that under the UCC, if there is a refusal to turn over the vehicle, it is "apparent" that self-help repossession will produce a breach of the peace." (Doc. 27 at 11)  In addition, Plaintiff contends that *Deevy v. Tassi*, 21 Cal.2d 109 (1942), though not a UCC breach of the peace case, stands for the proposition that an objection to a repossession in progress, even if the collateral is already secured, requires the secured party to resort to the courts." (*Id.* at 12)

As an initial matter, whether objections are made to a repossession is significant issue.  As Plaintiff observes, "An overwhelming number of courts across the country agree that if a debtor or third party makes an objection during the repossession, the repossessor must leave and resort to the courts." (*Id.* at 12, citations omitted)  However, there may not be a breach of the peace under California law if objections are voiced *after* repossession.  Indeed, the Court has located no authority under California law to support a conclusion that once a repossession is "complete," objections to the repossession constitute a breach of the peace, or result in the lack of a present right of possession by the repossessor.

Here, taking the facts in the light most favorable to Plaintiff, a Bolthouse security officer spotted Rodriguez in the employee parking lot and went outside to confront him.  However, McEntire testified that by that time, the tow truck had already connected Plaintiff's vehicle and was "leaving the south entrance" of the employee parking lot.  (Doc. 28 at 94, McEntire Depo. 34:4-8)  Though McEntire asserted she never made eye contact with the driver, and testified she did not know if she was yelling loudly enough for the driver to hear her (*id.*, 36:7-9, 37:3-10), even assuming Rodriguez *did* see and hear her, he had already moved Plaintiff's truck from its original parking spot, which is significant under California law.

Pursuant to California Business and Professions Code § 7507.12, which governs repossession of collateral which is a vehicle, "a repossession is complete if *any* of the following occurs:

(1)      The repossessor gains entry to the collateral.

(2)      The collateral becomes connected to a tow truck or the repossessor's tow vehicle, as those terms are defined in Section 615 of the Vehicle Code.

23

1          (3)     The repossessor moves the entire collateral present.

2          (4)     The repossessor gains control of the collateral."

3    Cal. Bus. & Prof. Code § 7507.12 (emphasis added).  Plaintiff contends the vehicle was not connected

4    when Rodriguez left the parking lot because he had not hooked up "straps, chains, and running lights."[7]

5    (Doc. 27-2 at 23, citing Rodriguez Depo. 102:15-103:7)  Thus, Plaintiff contends there is a "question of

6    whether the truck was actually 'connected'"  (Doc. 27 at 15)  On the other hand, there is no dispute that

7    Rodriguez had already "move[d] the entire collateral present" when McEntire first saw the tow truck.

8    (*See* Doc. 28 at 94, McEntire Depo. 39:13-18)  Thus, under Section 7507.12(3), the repossession was

9    complete.

10       Once repossession is complete, objections after the fact do not constitute a breach of the peace

11    that removes the present right of possession.  *See, e.g., James*, 842 F. Supp. at 1210 ("once [the

12    repossessor] had control of the car the repossession was complete and [the] protest was to no avail"),

13    *aff'd* 47 F.3d 961 (8th Cir. 1995); *Jordan v. Citizens & S. Nat'l Bank of S.*, 278 S.C. 449, 298 S.E.2d

14    213 (S.C. 1982) (holding conduct that "was not incident to seizing the truck" was not a "breach of the

15    peace as contemplated" by law).  For example, in *James*, the court found it was "evidence that a breach

16    of the peace occurred" because the plaintiff fought with the repossession agent.  *Id.*, 842 F. Supp. at

17    1210.  However, the court noted observed that the repossesor was in control of the car, "making the

18    repossession complete before he was attacked."  *Id.*  Accordingly, the court found that the protest "was

19    to no avail" and the fight after the repossession was complete could not "dispossess defendants of their

20    right to possession."  *Id.*  Similarly, there, the repossession was complete under California law before

21    McEntire voiced any objections.  Thus, the oral objections—even if a breach of the peace—did not

22    divest Defendants of the right to possession of the truck.

23                   *c.*     Use of "stealth"

24       Plaintiff contends, "Another factor to consider in determining a breach of the peace is the

25    creditor's use of stealth or deception."  (Doc. 27 at 21-22) (citing *Big Three Motors, Inc. v. Rutherford*,

26

27

28

[7] Notably, California Vehicle Code § 615(a) allows a tow to occur "by means of a crane, hoist, tow bar, tow line, or dolly." There is no indication that a tow does not occur merely because the devices used to assure the security of the collateral and safety of the public are not attached that, in fact, no tow occurs.  Indeed, a suggestion to the contrary is absurd.

432 So.2d 483, 485 (Ala. 1983); White & Summers, *Uniform Commercial Code* § 27- 6 (3d ed. 1988), at 575-76; *Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 29 (Tenn. 1991); *Giles v. First Virginia Credit Svcs.*, 560 S.E.2d 557, 565 (2002); *Hester v. Bandy*, 627 So.2d 833, 841 (Miss. 1993)).  Notably, Plaintiff does not identify any California cases to support his contention that the use of stealth may constitute a breach of the peace.  Nevertheless, the Court finds cases identified by Plaintiff are distinguished from the facts now before the Court.

For example, in *Big Three Motors,* the court noted that under Alabama law, a secured party could take possession of collateral "without judicial process if [repossession] can be done without breach of the peace." *Id.*, 432 So. 2d at 485 (citation omitted).  Courts found Alabama law "did not permit repossession through fraud, trickery, artifice or stealth." *Id.* (citing *Reno v. General Motors Acceptance Corp.*, 378 So. 2d 1103 (Ala. 1979)). Big Three Motors asserted "it legally repossessed Rutherford's automobile under the terms of their contract because Rutherford had defaulted in his payments." *Id.* at 485.  Rutherford "[did] not deny that he was behind on his payments," but reported Big Three Motors indicated "he could have a few extra days to make his payments." *Id.*  However, at the same time, Big Three Motors sent its employees to repossess the vehicle. *Id.*  To execute the repossession, Big Three Motors employees "forced" Rutherford's wife "to pull her car off the road." *Id.* at 484.  Rutherford asserted "Big Three Motors had no intention of allowing [him] to wait several days to make his payments and … the representations in the agreement to allow him to pay later were made with a fraudulent intent." *Id.* at 485. The court determined a "jury could reasonably conclude and find that Big Three Motors used force, trickery and fraud in the repossession." *Id.*  Further, the court found "the evidence was sufficient to show that the actions of the agents of Big Three Motors amounted to a breach of the peace *because of the manner in which they pulled Mrs. Rutherford off the road* and repossessed her husband's automobile." *Id.* at 485-486 (emphasis added).  Thus, it does not appear that the court considered the *trickery* was a breach of the peace, but rather only the *force* used by the repossession agents.[8]  Here, Plaintiff does not identify any misrepresentations by Rodriguez and

---

[8]  Although Plaintiff appears to contend the use of "stealth" includes all actions taken in secret without the knowledge of the debtor, this definition is not supported under Alabama law.  Rather, the word "stealth" was intended to encompass "theft, or stealing." *Reno*, 379 So.2d at 1105 (citation omitted).

Leon's Quality Adjusters, and there was no use of force to secure the repossession.

Likewise, although Plaintiff cites *Hester v. Bandy*, 627 So.2d 833, 841 (Miss. 1993)) to support his assertion that "Rodriguez practiced stealth," the facts of *Hester* are significantly different from the matter now before the Court.   In *Hester,* the plaintiffs became delinquent on their loan, the repossession contractor, Evans, was instructed to repossess their van.  *Id.*, at 835. The court summarized the facts as follows:

> Evans first looked for the van in the parking lot where Pam was employed, but it was not there. At approximately 3:00 a.m. on Tuesday, September 20, Evans, along with his employee, Bill Christner, went to the Hesters' residence and saw the Hesters' Camaro parked directly behind the van. Evans moved the car in order to get to the van.
>
> Evans hitched the van to the wrecker and was starting to remove it when Jimmy Hester awakened and went outside to see what was going on. He observed the men attaching the van to the truck by way of a 'quick snatch harness,' and he began yelling at the two men. In his pursuit of the truck and van as they left, Hester fell into a ditch and was injured. He was taken to Gulfport Memorial Hospital. His injuries included a torn rotator cuff to his right shoulder and a scratched and skinned left knee.

*Id.*  The court held that under Mississippi law, simply going on to a private driveway "without more, does not constitute a breach of the peace."  *Id.* at 840.  However, the court opined Evans' strategy to "repossess the van in the early morning hours… was a tactic which guaranteed generating fright or anger, or both, if discovered in progress by the Hesters."  *Id.* at 841. The court explained, "When Evans was in fact discovered and Hester attempted to physically resist the repossession, this terminated Evans' right to continue." *Id.*  However, "Evans did not cease, but carried his repossession on out." *Id.* In doing so, Evans "caused a breach of the peace." *Id.*  In contrast, here, there were no objections voiced until *after* Rodriguez completed the repossession and he was exiting the parking lot.  Further, there was no force required, such as the moving of another vehicle or breaking a lock, to execute the repossession.

    *d.*  *Manner in which Rodriguez drove while on the Bolthouse property*

Plaintiff contends the manner in which Rodriguez drove, including "driving the wrong way

---

In *Reno*, the repossession occurred "at night at the place where the plaintiff was employed," with the use of "a duplicate key obtained from the seller-agency."  *Id.* "The plaintiff was not present when the auto was removed and, in fact, did not know of its repossession until he was told by a part-time fellow employee, who made no attempt to intercede, that he had seen two men driving it away."  *Id.*  Because the repossession was made after Reno became delinquent on his loan, the court concluded "no stealth was present." *Id.* In addition, the court concluded "nothing in the facts suggest[] that the repossession here either provoked or tended to provoke a breach of the peace."

down a one-way lane" and executing the repossession during a shift change while others were in the parking lot establishes a breach of the peace.  (Doc. 27 at 14-15)  Significantly, Plaintiff cites no authority to support this assertion that *risk* while driving is sufficient to establish a breach of the peace.  (*See id.*)  Indeed, even where a repossession agent "exceeded the speed limit, failed to observe traffic signals and drove recklessly," a court declined to find a breach of the peace.  *See, e.g., Jordon*, 278 S.C. at 451-52.

### e.    Conclusion

As noted above, the Court looks to state law to determine whether Defendants had a "present right to possession" of the collateral.  Plaintiff fails to carry his burden to identify actions by Defendants that constitute a breach of the peace under California law.  Accordingly, Plaintiff fails to demonstrate Defendants violated Section 1962f(6)(A) of the FDCPA, because they had "a present right of possession" to his truck, and summary adjudication is appropriate on this claim.  *See Celotex*, 477 U.S. at 323.  Defendants' motion as to the alleged violations of the Fair Debt Collection Practices Act is **GRANTED**.

### B.    Violations of the Rosenthal Act

California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), "like its federal counterpart, is designed to protect consumers from unfair and abusive debt collection practices." *Robinson v. Managed Accounts Receivable Corp.*, 654 F.Supp.2d 1051, 1060 (C.D. Cal. 2009) (citing Cal. Civ. Code § 1788.1). As a threshold matter, a defendant must fall within the Rosenthal Act's definition of "debt collector" in order to be held liable for violating the Rosenthal Act.

Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).   Importantly, as addressed above, Plaintiff presents no evidence that employees of Leon's Quality Adjusters *regularly* engaged in debt collection by directing debtors to pay their notes. Consequently, Plaintiff fails to present evidence to support a conclusion that Defendants are debt collectors within the meaning of the Rosenthal Act.

Because Plaintiff fails to offer "proof concerning an essential element" of his claim for a violations of the Rosenthal Act, summary adjudication on this claim is appropriate. *See Celotex*, 477

27

U.S. at 323.  Consequently, Defendants' motion for summary adjudication of Plaintiff's second claim for relief is **GRANTED**.

### C.    Conversion

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages").  When a repossessor breaches the peace and does not have a right of possession, such actions can support a claim for conversion. *See Henderson*, 72 Cal. App. 3d at 770; *Cerra v. Blackstone,* 172 Cal. App. 3d 604, 609 (1985).

Here, as discussed above, Plaintiff fails to identify any evidence to support a conclusion Defendants are liable for a breach of the peace.  As such, Defendants—not Plaintiff—had a right to possession of the property, and his claim for conversion fails.  Defendants' motion for summary adjudication of the third claim for relief is **GRANTED**.

### D.    Violation of the Law

Plaintiff alleged that the defendants are liable under the Rosenthal Act because they committed violations of the law connected to the repossession.  However, because the Court finds the defendants were not debt collectors, it declines to consider these additional arguments under the Rosenthal Act.  Moreover, because it finds the defendants are entitled to judgment under the federal law, it would withdraw its consideration of this ancillary issue.

## V.    Conclusion and Order

As discussed above, Defendants carry their burden to demonstrate the absence of a genuine issue of material fact, and Plaintiff fails to identify evidence sufficient to establish required elements of his claims.  Accordingly, summary judgment is appropriate. *See Celotex,* 477 U.S. at 323.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1.    Defendants' motion for summary judgment (Doc. 26) is **GRANTED**;

2.    The Clerk of Court is DIRECTED to enter judgment in favor of the defendants and close this matter.

IT IS SO ORDERED.

Dated:   **August 29, 2016**                    **/s/ Jennifer L. Thurston**
                                             UNITED STATES MAGISTRATE JUDGE